[No. 2015.]

### The First National Bank of Grand Junction v. Wyman et al.

1. Mortgages—Foreclosure—Intervention—Pleading—Parties.

In an action by the holders of the bonds of a railway company to foreclose a deed of trust given by the company to secure the bonds, a petition for intervention alleging that intervener advanced money to the railroad company for the purpose of paying the wages of the employés and the general operating expenses of the company, and that at the time of advancing the money the railroad company and the holder of a majority of the bonds then against the property of the company, agreed that the money so advanced, if not paid out of the earnings of the company, should be paid out of the property prior to the bonds or mortgage upon the property, but it appeared that the owner of bonds who made the agreement was not an owner of any of the bonds at the time the action was brought, and was not a party to the action, stated no ground for intervention on account of such agreement.

2. Railroads — Mortgages — Operating Expenses — Priority of Claims.

Where a railroad was built and operated by the owner of a coal mine for the exclusive purpose of hauling the company's coal to market, and no business was done for the public, money advanced to pay the wages of employés and current expenses of running the road cannot be given priority of payment out of the property of the company over bonds secured by mortgage on the property.

*Error to the District Court of Mesa County.*

Mr. Samuel N. Wheeler and Mr. R. D. Thompson, for plaintiff in error.

Mr. Charles F. Caswell, for defendants in error.

Thomson, J.

This proceeding was instituted on the 15th day of October, 1897, by certain of the defendants in error, to foreclose a trust deed executed on the 25th day of February, 1892, by

The Little Book Cliff Railway Company, to The State Trust Company of New York, to secure the payment of 100 bonds, of the denomination of $1,000 each, issued by it on the 20th day of February, 1892. The complaint alleged the ownership of the bonds by the plaintiff; the default of the railway company in their payment; the refusal of the trustee to institute foreclosure proceedings; and prayed the appointment of a receiver to take possession of, operate and maintain the premises and property conveyed by the trust deed, and a decree for the foreclosure of the trust deed, and the sale of the property it described. A receiver was appointed in accordance with the prayer.

On the 5th day of October, 1898, the plaintiff in error presented, and asked leave to file, its petition in intervention in the cause. The application was denied, and the judgment has been brought here for review by writ of error. The ground of the court's ruling was the insufficiency of the petition, and the only question before us is whether, upon the facts stated, the proposed intervenor was entitled to relief. The petition stated that during the year 1891, the intervenor furnished to the railway company, $1,000 to pay the wages of the employees, and defray the general operating expenses of the railway company; that the advancement so made was necessary for the payment of wages, the maintenance of the business, and the preservation of the property of the company; and that in the months of May and September, 1894, and in the month of March, 1895, the intervenor, for the purpose of enabling the railway company to pay the wages of its employees, to defray its general operating expenses, and to continue in business, at its request advanced to it the further sum of $1,800. The petition averred that no part of the sums so advanced had ever been paid to the intervenor.

In connection with the averment of the loan of $1,800, made in May and September, 1894, and March, 1895, the petition, in intervention, contains the following further statement: "That at the time said $1,800 was advanced to said railway company, for the purposes aforesaid, it was mutually

agreed by and between this intervenor and the defendant, the Little Book Cliff Railway Company, and the owner and holder of a majority of the bonds then against the property of said railway company, and described in plaintiffs' complaint, that if this intervenor would advance the sum of $1,800 as herein set forth, and for the purposes herein stated, that the said railway company, and the said holder and owner of a majority of the bonds against the property of said railway company, that said sum of $1,800 together with the $1,000 then due intervenor from said company, together with interest on said sums at 18 per cent per annum, should be paid by said railway company from the first current money arising from the operation of said railroad thereafter; and it was further agreed that in event that said sums of money were not so paid from the current money arising from the management of said road within sixty or ninety days thereafter, that then the same should be paid out of the property of said railway company and prior to the payment of said bonds, or any mortgages upon said property, — to all of which said parties agreed at said time." This alleged agreement with the owner of a majority of the bonds "then against the property" of the company, receives only incidental mention in the printed argument. It does not appear to be insisted upon. However, further statement in the pleading renders it immaterial. We are not informed who was the owner of a majority of the bonds "then against the property;" but it is entirely clear from another averment in the petition that such owner was not one of the plaintiffs. The following is the averment referred to: "That as to the allegation in plaintiffs' complaint that the plaintiffs in this action are the lawful owners and holders of the one hundred bonds described in said complaint, or any of the same, * * * this intervenor has not and cannot obtain sufficient knowledge or information upon which to base a belief, and therefore demands strict proof of the same." The following is the allegation in the complaint concerning the ownership of the bonds, and with reference to which the averment in the

petition of want of knowledge was made: "That the plaintiffs are now the lawful owners and holders of said bonds so secured by said deed of trust as follows:

| | |
|---|---|
| Isaac C. Wyman . . . . . . | 91 bonds |
| F. Reynolds . . . . . . | 2 bonds |
| M. E. Williams . . . . . . | 2 bonds |
| E. Fiske . . . . . . . | 3 bonds |
| John Doane Estate . . . . . | 2 bonds." |

Now the intervenor knew with whom it contracted, and, according to its statement, knew that such person was the owner of a majority of the bonds; but it did not know that any of the plaintiffs owned any of the bonds. Therefore, the agreement was not made with any of the plaintiffs and none of the plaintiffs are bound by it.

The contention of the intervenor is that because the money which it advanced enabled the railway company to continue in business, and thus preserved the security of the bondholders, its claim is entitled, in equity, to precedence over the lien of the trust deed, and to prior satisfaction out of the proceeds of the sale of the property. The prevailing rule is that the claims of general creditors are subordinate to debts secured by lien; and, upon the sale of the property, are entitled to payment only out of the surplus remaining after the secured debts are satisfied. But the rule is not without exception. In the case of insolvent railroad corporations organized for general purposes of carriage and traffic, two classes of claims, accruing within a reasonable time before the appointment of the receiver, are, upon equitable principles, allowed priority over the lien of a mortgage.

First. The current earnings of a railroad constitute a fund out of which the current debts should be paid, and when there has been a diversion from the fund, applied to the payment of interest on the mortgage indebtedness, or to the permanent improvement of the road, or to the enhancement in any manner of the mortgage security, the amount diverted must be restored to the fund.

Second. The interests of the public demand that there shall be no interruption in the operations of the railroad; and outside of any question of diversion, upon considerations of public policy, where a debt has been incurred for labor and supplies necessary to the continued operation of the road, it is entirely proper that such debt should be allowed a preference over the mortgage. And in either of the instances to which we have referred, if the liability cannot be satisfied from the income in the hands of the receiver, the amount may be made good out of the proceeds of the sale of the property. *Fosdick v. Schall*, 99 U. S. 235; *Miltenberger v. Railway Co.*, 106 U. S. 286; *Barton v. Barbour*, 104 U. S. 126; *Union Trust Co. v. Illinois Midland Co.*, 117 U. S. 434; *Addison v. Lewis*, 75 Va. 701; *Blair v. St. Louis, etc., R. Co.*, 22 Fed. Rep. 471; *Wood v. N. Y. & N. E. R. Co.*, 70 Fed. Rep. 741.

But postponement of a mortgage lien to the claim of an unsecured creditor is permissible only in case of the existence of some condition such as we have mentioned. Upon this subject, in *Kneeland v. American Loan Co.*, 136 U. S. 89, Mr. Justice Brewer spoke as follows: "When a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it; and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea, that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

But conditions essential to the authority of the court to prefer an unsecured debt, had no existence in the case at

bar. The Little Book Cliff Railroad Company was not organized for general purposes. It conclusively appears from the bill for foreclosure and the petition in intervention, that the company owned and was operating certain coal mines, and that it built and used the railroad, which was about twelve miles in length, for the sole purpose of hauling coal *from* its mines, and hauling supplies *to* its mines. While it was called a railroad company, it was, in reality, a mining company; and its railroad was simply part of the machinery by means of which its mining operations were intended to be made profitable. The trust deed, of which foreclosure was sought, embraced the mines as well as the railroad. The company was not a common carrier. It did no business for the public. No part of its earnings was ever diverted for any purpose, for the simple reason that it had no earnings. There having been no diversion, there could be no judgment of restoration. Furthermore, money advanced to enable the company to continue the road in operation was merely money advanced to enable the company to mine and market its coal. It was a matter of no concern whatever to the public whether the railroad continued to haul out the company's coal, or stopped running altogether. No public interest was subserved by the loaning of the intervenor's money to the company. The interests of the public in the operation of the railroad, and in the operation of the other machinery in and about the mines, was precisely the same; and there is no more reason why money advanced to keep the mining machinery, including the railroad, in motion, should be allowed a priority of lien, than why money advanced to keep the spindles of a woolen factory in motion, should be allowed a priority of lien.

Let the judgment be affirmed.

*Affirmed.*