OF

## THE STATE OF IOWA

AT

### DES MOINES, MAY TERM, A. D. 1894

AND IN THE FORTY-EIGHTH YEAR OF THE STATE.

---

J. F. REYNOLDS, Appellant, v. T. A. BLACK, Trustee, *et al.* *

91    1
95   558
91    1
d108 510
108  511
91    1
110   15
f110 237
91    1
f112 156
91    1
e129 206₁

1 Principal and Agent: WHAT ESTABLISHES RELATION: DELIVERY OF MORTGAGE TO AGENT. Where it is agreed between debtor and creditor that, if the former became embarrassed, he should make a mortgage to the latter and place it with an attorney who should attend to it for the creditor, and, the contingency occurring, the mortgage is made and placed with an attorney, who records it and sends the note to the creditor, who returns it to, and approves the acts of, the attorney, this constitutes a delivery to the creditor, and the mortgage is prior to others which are recorded subsequent to these acts.

---

* The figures on the left of the syllabi refer to corresponding figures placed on the margin of the case at the place where the point of the syllabus is decided.

2 SAME: RELATION, WHAT ESTABLISHES. The debtor is not, by said agreement, made the agent of the creditor, in such sense as to charge the latter with knowledge of existing mortgages made by the debtor before the execution of the creditor's mortgages. *In re Guyer, 69 Iowa, 585, 29 N. W. Rep. 826, followed.*

3 Laborer's Preferred Claim under Chapter 48, Twenty-third General Assembly: PRIORITY OVER MORTGAGE. Wages not exceeding one hundred dollars, properly claimed, and earned in the master's business within ninety days prior to a seizure of his property, take precedence over mortgages existing and of record at the time of the seizure. U. S. Rev. Stat., sec. 3466, distinguished.

*Appeal from Woodbury District Court.*—HON. A. VAN WAGENEN, Judge.

MONDAY, MAY 14, 1894.

ACTION in equity to determine the priorities between creditors of O'Mere & Webster to a fund in the hands of the defendant Black as trustee. Decree was entered, from which the plaintiff, Reynolds, the defendants Sioux National Bank and W. W. Byam appeal. *Reversed as to plaintiff, and affirmed as to defendants.*

*Eugene Lutz* and *W. G. Sears* for appellant Reynolds and others.

*Gant & Briggs* for appellant W. W. Byam.

*Joy, Call & Joy* for Sioux National Bank and others.

GIVEN, J.—I. The parties, and consequently the pleadings, being somewhat numerous, it would consume space unnecessarily to state the pleadings. There is but little, if any, dispute as to the facts, and the following will be a sufficient statement of them for an understanding of the questions presented: For some time prior to July 2, 1891, the defendants O'Mere & Webster were engaged in business as merchant tailors. Being largely indebted, they executed mortgages on their stock of merchandise to secure promissory notes

of the firm as follows: February 11, 1891, to Sioux National Bank to secure four notes, five hundred and twenty-five dollars each, and filed for record July 2, 1891, at 12 noon. February 26, 1891, to H. S. Baker, to secure two notes, seventy-five dollars and one hundred and ten dollars, and filed for record July 2, 1891, at 11:05 A. M. June 12, 1891, to W. W. Byam, to secure note for five hundred dollars, filed for record July 2, 1891, at 11:20 A. M. June 23, 1891, to Frank Hunt, to secure note for six hundred dollars, and recorded July 2, 1891, at 11 A. M. June 29, 1891, to H. E. and Stacie Mosby, to secure note given for work, five hundred and fifty-four dollars and ninety cents, recorded July 2, 1891, at 11:10 A. M. June 29, 1891, to plaintiff Reynolds, to secure note for one thousand and ninety-seven dollars and ninety-one cents, filed for record July 2, 1891, at 11:15 A. M. On July 2, 1891, the stock of goods was taken under the mortgage to Hunt, which has been assigned to the Sioux National Bank. The goods were sold, and the proceeds, amounting to two thousand, eight hundred and fifty dollars, after payment of expenses, are held by the defendant Black as trustee, to abide the result of this litigation. At the time O'Mere & Webster suspended business—July 2, 1891—they were indebted to defendants Wingeland, Siverston, Hultman, Ehlers, Gran, Snow, Thompson, Schmidt, Skorunka, Rohton, Olson, and Foley, respectively, in sums stated, for labor as workmen in and about the business of the firm within the ninety days preceding. On July 3, 1891, each of these persons filed his claim, sworn to, with D. N. Kincaid, who then had possession of the property. The mortgages to Hunt and to Baker have been fully paid out of the two thousand, eight hundred and fifty dollars. It will be observed that four of the mortgages and the claims of laborers remain unsatisfied. The laborers claim the right to be first paid, and this the Mosbys and Reynolds

concede, and the bank and Byam deny. Reynolds claims priority over the bank and Byam, which they deny. The bank concedes that Byam is entitled to priority over it. No question is made against the decree as to the Mosbys. The contentions may be reduced to two inquiries, namely: Was the mortgage to Reynolds delivered before the other mortgages were recorded; and, if so, did he have notice of the other mortgages? and are the laborers entitled to priority over liens previously existing?

II. The following are the facts relating to the delivery of the mortgage to plaintiff, Reynolds: Mr. Reynolds, a resident of Wisconsin and brother-in-law of Mr. Webster, of O'Mere & Webster, loaned the firm sums of money at different times in 1888 and 1890, taking notes of the firm therefor. At the time plaintiff loaned said money, it was orally agreed between him and Webster that if the firm became pressed or embarrassed they should secure him by mortgage on their stock of merchandise, or give other satisfactory security, and said Webster should give the claim to an attorney to attend to it for him. The notes executed to plaintiff were left with the firm, and in pursuance of said agreement Mr. Webster, on June 29, 1891, placed them in the hands of Lutz & Sears, as attorneys for plaintiff, telling them of said agreement. Lutz & Sears figured the amount due up to June 2, 1891, and took the note sued upon for the amount of one thousand and ninety-seven dollars and ninety-one cents, and the mortgage to secure it, dating them June 2, 1891, and filed the mortgage for record July 2, 1891, at 11:15 A. M., and paid the recording fee for plaintiff. Lutz & Sears sent the note to the plaintiff on the same day it was taken, and soon after, to wit, July 4 following, received the note and plaintiff's acquiescence in what they had done, and his request that they look after his interest in the matter. Prior to this, Lutz &

Sears had no acquaintance or correspondence with the plaintiff.

Plaintiff testifies that he first knew of the mortgage being taken June 30, 1891; that he learned it through Lutz & Sears; and we may infer that the note then reached him, as they sent it to him June 29. The mortgage was taken, the note received, and the action of Lutz & Sears approved by the plaintiff before either of the mortgages in question were filed for record. If the order of filing is to control, plaintiff has priority over those to Byam and to the bank; but it is claimed that he had knowledge of the execution of these mortgages at the time his mortgage was executed to him. There is no claim that he personally had such knowledge, but it is insisted that O'Mere & Webster were his agents, as well as his debtors, in the transaction; that they knew of the execution of the other mortgages, and that plaintiff is chargeable with whatever knowledge his agents had. Plaintiff contends that the mortgage was executed to him in pursuance of said parol agreement, and that what O'Mere & Webster did was in performance of that agreement on their part, and not as his agents. *In re Assignment of Guyer*, 69 Iowa, 585, 29 N. W. Rep. 826, the debtor, being embarrassed, executed a mortgage on his stock of merchandise in favor of one of his creditors, and placed it in the hands of an attorney, who was not agent for the creditor, and who caused it to be filed for record. This was done in pursuance of an agreement between the debtor and creditor, made at the time the debt was contracted. This court held that the assent of the creditor to receive the mortgage was expressed in the agreement, and continued up to the execution of the mortgage, and that the mortgage was valid. This case is identical in its facts, except in one particular. In that, the mortgage was to be given upon a particular stock of merchandise; in this, it was to be

given upon a particular stock of merchandise, "or give other satisfactory security." By this agreement O'Mere & Webster bound themselves, in case of embarrassment, to give a mortgage on their merchandise, and plaintiff agreed to receive the same. Any other security that might be offered in lieu thereof was subject to the approval of appellant. It was he who must determine whether any other security would be satisfactory. O'Mere & Webster had no right to substitute a different security without appellant's consent. The agreement is not different from what it would have been without this provision as to other satisfactory security, because, without it, the parties could have agreed upon other security as well as with it. The provision as to other security does not constitute an agreement. The only agreement was for the giving and receiving the mortgage on the merchandise. Following the *Case of Guyer, supra,* we hold that in executing the mortgage O'Mere & Webster acted for themselves only, and in the performance of their agreement; that they were not agents of appellant, and that he is not chargeable with their knowledge of the prior execution of the other mortgages. The mortgage to appellant having been executed and delivered to him, and filed for record, prior to the time the mortgages to appellees Byam and Sioux National Bank were filed for record, and having been received by him without knowledge of the execution of said other mortgages, appellant is entitled to priority by virtue of his mortgage over the mortgages of said appellees.

III. The district court decreed that the trustee should first pay the claims of the defendant Wingeland and the eleven other laborers whose claims were filed. These claims are made under chapter 48, Acts Twenty-third General Assembly, which provides as follows: "That hereafter, when the property of any company, corporation, firm, or person shall be

seized upon by any process of any court of this state; or when their business shall be suspended by the action of creditors or be put into the hands of a receiver or trustee, then in all such cases, the debts owing to laborers or servants, which have accrued by reason of their labor or employment to an amount not exceeding one hundred dollars to each employee for work or labor performed within ninety days next preceding the seizure or transfer of such property, shall be considered and treated as preferred debts and such laborers or employees shall be preferred creditors, and shall first be paid in full; and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata* after paying costs. Any such laborer or servant desiring to enforce his or her claim for wages under this act shall present a statement under oath showing the amount due after allowing all just credits and set-offs, the kind of work for which such wages are due, and when performed, to the officer, person, or court charged with such property, within ten days after the seizure thereof on any execution or writ of attachment, or within thirty days after the same may have been placed in the hands of any receiver or trustee; and thereupon it shall be the duty of the person or court receiving such statement to pay the amount of such claim or claims to the person or persons entitled thereto (after first paying all costs occasioned by the seizure of such property) out of the proceeds of the sale of the property seized."

Following the above is a provision for contesting such claims. It is not questioned but that these laborers are entitled to payment out of the fund in the hands of the trustee if there is sufficient for that purpose. The defendants the Sioux National Bank and W. W. Byam contend on their appeals that said defendant laborers are not entitled to priority over their mortgages, or, in other words, that said chapter does not

give them "priority over mortgages or other express liens which are in existence at the time the business of the debtor may be suspended by the action of creditors, or be put into the hands of a receiver or trustee." This statute is before this court for construction for the first time, and, being somewhat out of the usual course of legislation, we find but little in the way of precedent to aid us in its construction. While, as contended in argument, we may not extend its provision beyond what was intended, by construction, we must, aided by familiar rules for construing statutes, arrive at and give effect to the legislative intent. It will be observed that it is only when the property of a debtor is seized, his business suspended by action of his creditors, or transferred to a receiver or trustee, that this statute becomes operative. It is well known that in cases of such failure employees, because of the smallness of the amount usually due to them as wages, and their confidence in their employer, are the last to demand security, or to proceed against him by legal processes. It is a matter of common observation that in such cases other creditors usually consume the assets to the exclusion of the employees, whose dues, though small, are of great importance to them. The evident purpose of this statute is the better protection of the wage-working class of creditors. To this end it is provided that wages not exceeding one hundred dollars, earned within ninety days preceding the seizure or transfer of the property, shall be treated as preferred debts, and that the laborer as a preferred creditor, "shall first be paid in full." This preference is grounded upon the broadest equity, for this class of creditors usually contributes to create, enhance, or preserve the assets from which the debts are to be paid. It is contended that no lien is given to the laborer, that to give him preference over existing liens is to displace such liens, and that the preference only applies to what is left after satisfying existing

liens.   To so construe this statute would largely defeat
its manifest purpose.   It is only when the assets have
been seized, his business suspended by the action of
creditors, or transferred to a receiver or trustee, that
the statute applies.   By the seizure, by the action of
creditors, or when the business is put into the hands of
a receiver or trustee, there is usually but little, if any-
thing, left open to the preference given, if the construc-
tion contended for must prevail.   By the seizure or
action of creditors express liens are created that exist-
ed before the employee may assert his rights under this
statute.   The preference given in the statute would
usually be a barren privilege if deferred to prior exist-
ing liens.   The purpose of the statute is made plain by
the provision that these preferred creditors "shall first
be paid in full,"— a purpose that is emphasized by the
concluding provision that they shall be paid by the
person or court receiving their statement "after first
paying all costs occasioned by the seizure of such prop-
erty out of the proceeds of the sale of the property
seized."   An officer seizes the assets of the debtor on
an execution or attachment, and thereby the creditor
acquires a lien.   Yet, thereafter the laborer may pre-
sent his claim to the officer, and in such case the stat-
ute expressly provides that the officer shall pay the
laborer, after first paying costs, notwithstanding the
preexisting lien acquired by the execution or attach-
ment.   These appellants cite section 3466, Revised
Statutes, United States, providing that, where insol-
vent persons or estates are indebted to the United
States, "the debts due to the United States shall be first
satisfied."   Cases are cited holding under this stat-
ute that the United States did not have a lien, and
therefore no claim, as against a *bona fide* transfer of
property in the ordinary course of business.   The rea-
sons upon which these two statutes are based, and the
difference in their language and provisions, render them

clearly. distinguishable. Said section 3466 is not
grounded upon the reasons that led to the enactment
of our statute. Its single provision is that the debts
due to the United States should be first satisfied, while
our statute provides that it shall be preferred, that the
creditors shall be preferred, that the debts shall be first
paid, and provides for its first payment under circum-
stances that preclude the idea that the preference is
subject to prior liens. It follows from the conclusions
announced that the decree of the district court is *re-
versed on the appeal of the plaintiff, Reynolds, and
affirmed upon the appeals of the defendants Sioux
National Bank and W. W. Byam.*