WALLACE HECKMAN, Assignee,

*v.*

HERMAN TAMMEN *et al.*

*Opinion filed February 19, 1900.*

1. LIENS—*the act of 1895, to protect claims for wages, construed.* Section 1 of the act of 1895, (Laws of 1895, p. 242,) which protects claims for wages of laborers or servants where their employer's business is suspended by the action of creditors or the appointment of a receiver, creates in favor of such laborers and servants a lien superior to claims of other creditors, whether general or secured.

2. SAME—*effect of act of 1895 upon lien of chattel mortgage.* One taking a chattel mortgage subsequent to the passage of the act of 1895 to protect claims for wages, takes his lien consenting that his security may be impaired by the payment of claims for wages, since the existing law enters into and forms a part of his contract.

3. SAME—*act of 1895 is not limited to unskilled laborers.* The act of 1895, relating to claims for wages, while confined in its application to persons performing manual services, is not limited to unskilled laborers, but includes compositors, pressmen and cylinder feeders and book-keepers working for weekly wages.

*Heckman* v. *Tammen,* 84 Ill. App. 537, affirmed.

CARTWRIGHT, C. J., and BOGGS and MAGRUDER, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

HECKMAN, ELSDON & SHAW, for appellant.

SMITH, HELMER, MOULTON & PRICE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This case was begun by bill of interpleader in the superior court of Cook county. On December 7, 1897, George S. Morrill & Co. foreclosed a chattel mortgage given by Edward Beeh, Jr., on his chattel property contained in his printing establishment and used in carrying

on his business, and said property was taken and sold by Joseph Ditto, a constable, under the mortgage, and a sufficient amount of the proceeds was applied to pay the costs and charges and the debt of Morrill & Co., leaving a balance of $517.39. The American Printing Company held a second mortgage given by Beeh, March 1, 1897, on the same property, to secure Beeh's debt to it of $879.95. After Ditto had taken possession under the Morrill mortgage, and before the sale, the appellant, who was the assignee of the then insolvent American Printing Company, placed said second mortgage in Ditto's hands for foreclosure. The balance of the proceeds in Ditto's hands after payment of the Morrill mortgage, if applied in payment of the second mortgage, would have left nothing for appellees. Beeh was insolvent, and his business was suspended by the action of Morrill & Co. in foreclosing their mortgage. He was at the time indebted to the appellees, his employees, for labor and services, as compositors, pressman, cylinder-feeder and clerk, done and performed in and about his said business, in an amount exceeding said balance in Ditto's hands. The employees having presented to Ditto their sworn statements of their claims, in compliance with section 2 of the act mentioned below, and both parties, the appellant and the appellees, claiming the fund, Ditto filed his said bill of interpleader. By its decree the superior court awarded the fund to appellees to pay their respective claims for labor, and the Appellate Court having affirmed that decree and granted a certificate of importance, the appellant prosecuted this his further appeal.

The questions for decision are of law, only, and involve a construction of the act of June 21, 1895, entitled "An act to amend an act entitled 'An act to protect employees and laborers in their claims for wages,' approved June 15, 1887, in force July 1, 1887." (Laws of 1895, p. 242.) The first section is as follows: "That hereafter, when the business of any person, corporation, company or firm

shall be suspended by the action of creditors, or be put into the hands of a receiver or trustee, then in all such cases the debts owing to laborers or servants which have accrued by reason of their labor or employment, shall be considered and treated as preferred claims, and such laborers or employees shall be preferred creditors, and shall be first paid in full, and if there be not sufficient to pay them in full the same shall be paid from the proceeds of the sale of the property seized: *Provided,* that any person interested may contest any such claim or claims, or any part thereof, by filing exceptions thereto, supported by affidavit, with the officer having the custody of such property, and thereupon the claimant shall be required to reduce his claim to judgment before some court having jurisdiction thereof before any part thereof shall be paid."

Appellees' claims were not contested, by exceptions filed thereto, in the manner provided for by the statute, and the only questions important for us to consider are, whether or not the appellees belong to the class of persons whose claims are to be treated as preferred under the statute, and, if it be conceded or held that appellees, as such claimants, are entitled to a preference in payment, whether or not they are entitled to such preference over the claim or demand of appellant secured by chattel mortgage.

Appellant insists that appellees' claims have a preference only over the claims of general creditors, and not over those which had been secured by chattel mortgages, or other liens, prior to the accruing of the claims for labor. In the case at bar the mortgage lien of appellant attached before any part of appellees' claims accrued, but as the mortgage was given and became a lien after the statute came in force, such lien was subject to be controlled or modified by the provisions of the statute. In other words, its force and effect would be determined by existing laws, which, in effect, became a part of the

contract. The law, then, provided that debts for labor or employment owing to laborers or servants from any person whose business should be suspended by the action of creditors should be treated as preferred claims; that such laborers and employees should be preferred creditors and should be first paid in full, and if there should not be sufficient to pay them in full, they should be paid from the proceeds of the sale of the property seized. No exception in favor of secured creditors is expressed or implied. The effect of the act is to create in favor of laborers and servants a statutory lien upon chattel property superior to the claims of other creditors in cases coming within the provisions of the statute. This is manifest from the language of the act. We must ascertain the intention of the legislature from the language used, and we cannot interpolate exceptions or qualifications where none can be implied from a consideration of the entire act, or from it and other acts *in pari materia.* This legislation is remedial and should be liberally construed. In most cases such laborers have no available means to make secure their demands for labor. Such demands are usually small and payable at short intervals, and it is but the enactment of the simplest natural justice into law that when the chattel property used in the business is seized by creditors and the business is thereby suspended, such property should be held for the payment of such labor demands before other creditors are paid. Almost from time immemorial similar protection has been awarded to seamen. Nor is the chattel mortgage creditor thereby necessarily deprived of his security. He takes his lien with knowledge that if he permits the property to be so used and the debts to laborers to remain unpaid his security will be impaired to the extent of their unpaid demands. The provisions usually contained in chattel mortgages afford means for the protection and enforcement of his lien. Similar statutes in Indiana and Iowa have received a similar construction.

*Reynolds* v. *Black,* 91 Iowa, 1; *Bell* v. *Hiner,* 16 Ind. App. 184; 44 N. E. Rep. 576; *Bass* v. *Doerman,* 112 Ind. 390; 14 N. E. Rep. 377. See *Buck* v. *Paine,* 50 Miss. 648; 52 id. 271.

But it is contended that the statute applies only to unskilled laborers, and not to appellees, who exercised some degree of skill in the printing business. These appellees performed physical labor as typesetters, cylinder-feeders, pressmen, and one also kept the books, at stipulated wages of so much per week. That in their employment they had acquired and used skill would not render the designation of "laborer" inapplicable. They labored with their hands for their employer for wages, and were clearly laborers within the meaning of the statute. To so construe the statute as to limit its benefits to mere menial servants performing the lowest forms of labor requiring no skill, would, we think, do violence to the meaning of the act and leave the evil intended to be cured to remain in existence only slightly mitigated. While we are disposed to hold that the statute must be confined to those who perform manual services, still it cannot be confined to such services only that require no skill in the performance of them. *P. & D. R. R. Co.* v. *Leuffer,* 84 Pa. St. 168; *Stryker* v. *Cassidy,* 76 N. Y. 50; *Palmer* v. *VanSantvoord,* 153 id. 612.

Both questions here involved were elaborately considered in the opinion of the Appellate Court in this case, and we see no necessity for a more extended discussion of them here.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CARTWRIGHT, C. J., and MAGRUDER and BOGGS, JJ., dissenting.