L. W. WELLS, Appellant, v. J. H. KELLEY, Appellee.

Laborers' Liens: NOTICE OF: MORTGAGED PROPERTY. Code, sections 4019 and 4020, relating to labor liens where the property of a corporation is seized under process of court or placed in the hands of an officer to pay debts, have no application to the proceeds of a sale of mortgaged personal property on foreclosure of the mortgage by advertisement and sale, and a notice by the employe, as provided in said sections, does not create a lien on the fund derived from such sale.

*Appeal from Polk District Court.*—HON. S. F. PROUTY, Judge.

WEDNESDAY, OCTOBER 28, 1903.

ACTION to enforce a laborer's lien. There was a demurrer to the petition, which was sustained. Plaintiff elected to stand on his petition, and refused to plead over. Judgment in favor of defendant for costs, and plaintiff appeals. —*Affirmed.*

*J. L. Witmer* for appellant.

*Berryhill & Henry* for appellee.

BISHOP, C. J.—The facts appearing from the petition are substantially as follows: Prior to March 24, 1902, J. D. Wells & Sons Co., a corporation, had executed to F. Bacon a chattel mortgage on all the property owned by it. On said date the defendant, who is said to be a deputy sheriff of Polk county, acting for and at the request of said mortgagee, took possession of all the mortgaged chattels, and, having advertised the same for sale by posting notices as required by the terms of the mortgage, sold the property on April 4, 1902, at public auction, and thereafter accounted to the mortgagee for the proceeds thereof. It appears that said defendant, in preparing the notices to be posted, and in making account of the sale, used printed blanks found in the sheriff's office, designed and intended to be used in connection with sales made under execution. In the notice it is stated—being a part of the printed portion—that the sale will be made by "the undersigned sheriff of said county." The same is signed, however, by F. Bacon, by J. H. Kelley, agent. The account of sale is signed, "J. H. Kelly, Agent for F. Bacon." It is alleged that on April 1, 1902, there was filed with defendant, Kelley, a notice as follows: "In District Court, Polk County, Iowa. Frank Bacon vs. J. D. Wells & Sons Co. To G. W. Mattern, Sheriff: You are hereby directed to retain from the proceeds of the sale of the property in the above-entitled cause, seized upon by you, the sum of $100, and pay the same to the undersigned, for labor performed by him, for defendant within ninety days prior to the seizure of the stock by you. Said amount is claimed as a preference under Code, sections 4019 and 4020. A statement of the amount due is attached. [Signed] L. W. Wells, Applicant." The notice is sworn to, and attached is a statement of account, showing wages due L. W. Wells from J. D. Wells & Sons Co. from December 14, 1901, to March 22, 1902, at $14.50 per week; the total amount be-

ing $217.50. It is then alleged that said application was ignored by the defendant, and judgment is now asked against him for the sum of $100.

The petition is attacked by the demurrer upon two grounds: It is said in the first place that sections 4019 and 4020 have no application to the foreclosure of a chattel mortgage by notice and sale. In the second place it is said that the notice alleged to have been filed with defendant was defective, in that it was entitled in the district court, and there was no action pending in said court; that it was addressed to the sheriff of Polk county, and not to the defendant as agent for the mortgagee; that it did not state "the kind of work for which such wages are due," as required by section 4020 of the Code.

Section 4019 of the Code is as follows: "When the property of any * * * corporation shall be seized upon by any process of any court, or placed in the hands of a receiver, trustee or assignee, for the purpose of paying or securing the payment of the debts of such * * * corporation, the debts owing to the employes for labor performed within the ninety days next preceding the seizure, or transfer of such property, to an amount not exceeding one hundred dollars, shall be a preferred debt and paid in full," etc. Section 4020 is as follows: "Any employe desiring to enforce his claim for wages, at any time after seizure of the property under execution or attachment, and before sale thereof is ordered, shall present to the officer levying on such property, or to such receiver, trustee or assignee, or to the court having custody of such property, or from which such process issued, a statement under oath, showing the amount due," etc., "and the kind of work for which such wages are due, and when performed," etc. The right thus conferred by statute had no existence whatever at common law, and, in conformity to a well-known rule of construction, we are limited to the language of the statute, and the necessary implications arising therefrom,

in measuring and defining the right conferred. It is the legislative will that we are to ascertain and interpret, and we may not by construction or interpretation add to or take from that which the lawmaking power has seen fit to grant as a special right or privilege, however great the necessity, or pressing the exigency. *Ripley v. Gifford*, 11 Iowa, 367. Where there is no ambiguity in the language employed, it must be manifest that we have no other duty than to declare in favor of enforcement according to the reading of the statute. We think the provisions of the statute in question are plain. It appears in the Code under the general head of "Executions," and, in a word, provides that the property of a corporation, etc., held in *custodia legis*, through the medium of some process of court, or by a receiver, trustee, or assignee, shall be subject to labor liens. It does not refer, in terms or by necessary implication, to the disposition of property otherwise than by an officer of, and pursuant to an order of court, or under the process of a court. To hold that the statute has application to sales made pursuant to a contract of pledge, or of a mortgage of chattels, and without having recourse to the courts, or any officer thereof, would be to read into the enactment a provision which the legislature, had it so desired, might well have included therein, but did not in fact do so. We think there was deliberate purpose in this. In the statute as originally enacted (chapter 48, Acts Twenty-Third General Assembly) it was provided that "when the property of any corporation," etc., "shall be seized upon by any process of any court; *or when their business shall be suspended by the action of creditors*, or be put into the hands of a receiver,"-etc. Now, it may well be said that proceedings to foreclose a chattel mortgage by notice and sale, where the effect thereof would be to suspend the business of the mortgagor, would come within the particular provision of the statute which we have italicized. But that provision was entirely omitted from

the present Code, and, as we think, there was but one purpose in so doing, and that was to confine the operation of the statute to those cases where the taking of the property, or the disposition thereof, was by virtue of some process or order of court. Now in this case no court had jurisdiction of the mortgage foreclosure, and no officer of court was in possession or had control of the property. True, Kelley was a deputy sheriff, but he did not in fact, nor did he profess to act as such. The use by him of blanks such as were kept and used in the sheriff's office could not and did not give official character to the acts done by him. He was simply an agent, and he did no more than might have been done by any other person selected by the mortgagee to act in the premises. It follows from what we have said that the notice filed by plaintiff did not have the effect to create or make effective a lien upon the fund derived from the foreclosure sale, and that the demurrer to the petition was therefore properly sustained. —AFFIRMED.