WILLIAM SEYMOUR

*v.*

GERTIE BERG.

*Opinion filed April 18, 1907—Rehearing denied June 6, 1907.*

1. LIENS—*the act of 1895, relating to claims for wages of employees, construed.* The act of 1895, (Laws of 1895, p. 242,) to protect employees in their claims for wages, merely places the claims of employees for labor in a preferred class, which are to be paid in preference to other simple contract creditors who have no record liens, and does not create an express statutory lien superior to all other liens, without reference to priority. (*Heckman* v. *Tammen,* 184 Ill. 144, overruled.)

2. SAME—*claims for wages for labor are not superior to a prior mortgage.* Where property of an employer is taken possession of by a mortgagee, claims of employees for wages, which have arisen since the mortgage lien was created, are entitled to preference only in the surplus remaining after the mortgage debt is satisfied, and if there is no surplus, neither the mortgagee nor the purchaser at the sale is liable for such claims. (*Heckman* v. *Tammen,* 184 Ill. 144, overruled.)

HAND, C. J., and CARTER, J., dissenting.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding..

This is an appeal from the judgment of the Appellate Court for the First District affirming a decree of the superior court of Cook county rendered in that court in favor of Gertie Berg and against William Seymour.

The original and amended bills of appellee were filed for the purpose of foreclosing an alleged lien which she claimed as a laborer or servant of the Virginia Livery Company. The claim of appellee is based on the act of June 15, 1887, as amended June 21, 1895, being an act to protect employees and laborers in their claims for wages.

The facts out of which this litigation grows, so far as the same are necessary to the decision of the questions here involved, are, in substance, as follows: For several years

prior to December, 1902, the Virginia Livery Company was engaged in the livery business at 250 East Kinzie street, in the city of Chicago. All of the personal property of the livery company was encumbered by a chattel mortgage held by Forrest O. Murdock. The amount of the note secured by this mortgage was $6700. It is not controverted that the mortgage was a valid, subsisting lien on all the property of the livery company before appellee's claim, or any part of it, originated. The validity of the mortgage is not questioned. It appears from the evidence that the Virginia Livery Company was in possession and control of a building used as a boarding house, located in the vicinity of the livery barns. At the boarding house the livery company had usually boarded its employees. About June 1, 1901, the manager of the livery company made an arrangement with appellee to rent her the boarding house for $50 per month, together with a part of the furnishings. The livery company agreed to board its employees with appellee and to see that she was paid for all board furnished to employees of the livery company. Under this arrangement appellee took charge of the boarding house and furnished board to the employees of the livery company at four dollars per week, allowing four and one-third weeks per month. The contracts with its employees by the livery company provided for the payment of a certain amount per month, and board. An account was opened on the books of the livery company with appellee, in which she was credited with the amount of board due her for board furnished its employees. She was charged with rent $50 per month and with items of cash payment made to her from time to time, and the evidence shows that certain merchants who were boarding their horses with the livery company would pay their bills to the livery company by furnishing supplies to the boarding house. Outside of such supplies as were furnished in this way in exchange for bills due the livery company for boarding horses, appellee bought her supplies wherever she saw

proper.   Bills were often paid by the livery company for appellee when they were properly O. K.'d by her and charged to her account.   In December, 1902, the amount due appellee for board thus furnished to the livery company's employees was $885.06.   On December 4, 1902, Murdock took possession, under his chattel mortgage, of all the personal property belonging to the Virginia Livery Company, and that company became wholly insolvent and went out of business.   Appellant was placed in possession as custodian of the property.   On the 6th of December appellee caused a notice to be served upon appellant of a duly verified claim for wages, in compliance with section 2 of the statute of 1895, above referred to.   It appears that exceptions were filed with Seymour by Murdock denying that appellee was entitled to any preference as against the mortgage, and also denying that she had ever been in the employ of the livery company as servant or laborer.   On the 16th of December the property was sold under the chattel mortgage and the appellant became the purchaser for $5000, which was paid to Murdock, the mortgagee.   No part of appellee's claim was paid.   Thereupon she filed this bill against Murdock, the Virginia Livery Company and appellant.

Answers were filed by Murdock and Seymour, in which they denied all of the material averments of the bill.   It was averred in the answers that exceptions had been filed to the claim of appellee, and that she had not thereupon reduced her claim to judgment, as the statute requires.   Appellee afterwards, and before this cause was heard, brought an action of assumpsit against the livery company and obtained judgment by default for the amount of her claim.   Thereupon she filed a supplemental bill setting up the recovery of the judgment, and the cause proceeded to a hearing on the supplemental bill, the answers of Murdock and appellant, and the proofs heard in open court.   It resulted in a personal decree against Seymour for the full amount of appellee's claim.

In the action of assumpsit against the livery company, appellee, in her declaration and her affidavit of merits filed therewith, described her claim as being for "wages earned and due to her for labor performed by appellee as servant of the defendant at defendant's request." The judgment recovered followed the language of the declaration, and recited that the "damages were due the plaintiff for wages as a laborer or servant." The court below held, and this holding has been affirmed by the Appellate Court, that the recital in the judgment that appellee's claim was for wages due her as a servant and laborer for the livery company was conclusive on appellant, and disregarded all evidence introduced which tended to show that appellee's claim was not for wages. This ruling is assigned as error. It is also insisted by appellant that the court erred in not dismissing appellee's bill and in rendering a decree against appellant. The case comes to this court on a certificate of importance granted by the Appellate Court for the First District.

WILLIAM ANNAN TAYLOR, for appellant.

ROSENTHAL & HAMILL, and CHARLES H. PEASE, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The decree in this case is clearly erroneous and must be reversed. Without discussing the question whether the judgment of appellee against the Virginia Livery Company was conclusive, as against appellant, as to the nature of appellee's claim, in the view we take of this case appellee was not entitled, as against appellant, who was a purchaser in good faith at a mortgage sale, to any preference under the statute relied on. This statute was originally enacted in June, 1887, and it provided that, under the circumstances stated in the statute, "debts owing to laborers or servants, which have accrued by reason of their labor or employment

to an amount not exceeding $50 to each employee, for work
or labor performed within six months next preceding the
seizure or transfer of such property, shall be considered and
treated as preferred debts, and such laborers or employees
shall be preferred creditors, and shall be first paid in full."
(Laws of 1887, p. 308.)   This act was amended June 21,
1895, by striking out the limitations as to the amount of
the labor claim and the time within which the labor should
be performed.   The present act, under which appellee seeks
to maintain this suit, is found on page 2586 of Starr & Cur-
tis' Annotated Statutes, and is as follows:

"Sec. 1. * * * Hereafter, when the business of any
person, corporation, company or firm shall be suspended by
the action of creditors, or be put into the hands of a receiver
or trustee, then in all such cases the debts owing to laborers
or servants which have accrued by reason of their labor or
employment, shall be considered and treated as preferred
claims, and such laborers or employees shall be preferred
creditors, and shall be first paid in full, and if there be not
sufficient to pay them in full the same shall be paid from
the proceeds of the sale of the property seized: *Provided,*
that any person interested may contest any such claim or
claims, or any part thereof, by filing exceptions thereto,
supported by affidavit, with the officer having the custody
of such property, and thereupon the claimant shall be re-
quired to reduce his claim to judgment before some court
having jurisdiction thereof before any part thereof shall
be paid.

"Sec. 2. Any such laborer or servant desiring to enforce
his or her claim for wages under this act, shall present a
statement under oath showing the amount due, the kind of
work for which such wages are due, and when performed,
to the officer, person or court charged with such property,
within ten (10) days after the seizure thereof on any exe-
cution or writ of attachment, or within thirty (30) days
after the same may have been placed in the hands of any

receiver or trustee, and thereupon it shall be the duty of the person or court receiving such statement to pay the amount of such claim or claims to the person or persons entitled thereto.

"Sec. 3. No claims made under this act shall be paid until after the expiration of the time in which to present such claims. And if the funds realized on the property seized be insufficient to pay the total claims presented, then such funds shall be prorated on such claims."

It will be seen by reference to section 1 of the above statute that it is provided that when the business of any person is suspended by the action of creditors or be put in the hands of a receiver or trustee, the debts owing to laborers or servants shall be preferred claims and the laborers or employees shall be preferred creditors and shall be first paid in full. The clear intent of the legislature was to place debts due to employees for labor in a preferred class, and to require that such preferred claims should be paid in preference to other simple contract creditors who held no record liens. The fund out of which these preferred claims were to be paid is whatever interest the failing debtor has in the property or assets that go into the hands of the receiver or trustee. The court below and the Appellate Court have treated this statute the same as if it created an express statutory lien superior to all other liens, without reference to priority, that might exist against the property of the failing debtor. This view is not warranted by the language of the statute under consideration, in its original or amended form. The statute merely gives a *preference* to claims for labor or services,—which is quite a different matter from creating a statutory lien,—upon all of the debtor's property. If a mortgagee who takes possession for the purpose of foreclosing his lien may be treated as a "receiver or trustee," within the meaning of section 1 of this statute, certainly he could not be treated as the receiver or trustee except as to any surplus that might remain in his hands after discharg-

ing the mortgage debt and the necessary costs and expenses connected with its foreclosure. A receiver or trustee, or an assignee of an insolvent debtor, would only take such interest or title as the failing debtor had and subject to all valid existing liens. (*Jack* v. *Weiennett,* 115 Ill. 105; *Field* v. *Ridgely,* 116 id. 424; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180.) In this case, as already shown, the property seized under the chattel mortgage failed to satisfy the mortgage, the deficit being about $1700. There was therefore nothing in the hands of the appellant belonging to the Virginia Livery Company out of which any claim against the livery company, preferred or otherwise, could be paid.

But it is contended by appellee, under the authority of *Heckman* v. *Tammen,* 184 Ill. 144, that the effect of the act in question is to create a statutory lien in favor of laborers and servants upon the chattel property, and it is conceded that if that case was well decided then it must control here and the contention of appellee be sustained. That case was decided by a divided court, and at a time when there were but few decisions in other States giving a construction to similar statutes and none directly in point in this State. The decision then made was based upon *Reynolds* v. *Black,* 91 Iowa, 1, *Bell* v. *Hiner,* 16 Ind. App. 184, (44 N. E. Rep. 576,) *Bass* v. *Doerman,* 112 Ind. 390, (14 N. E. Rep. 377,) *Buck* v. *Paine,* 50 Miss. 648, and *Same* v. *Same,* 52 id. 271. The case of *Bass* v. *Doerman, supra,* was correctly decided, but it was not there held that the claim for labor or services was a lien superior to prior recorded liens. The case of *Bell* v. *Hiner, supra,* relied on in the *Tammen case,* is an authority that lends some support to the conclusion announced by this court in the *Tammen case,* but that case, and also *Small* v. *Hammes,* 156 Ind. 556, (60 N. E. Rep. 342,) are expressly overruled by the Supreme Court of Indiana in the later case of *McDaniel* v. *Osborne,* 75 N. E. Rep. 647, where a statute in substance the same as the one under consideration was before the court, and it was there said: "There

227—27

is no intent manifest in the title, or from any language em-
ployed in the body of the statute under consideration, that
an employee should have or could acquire a lien upon all
the property of his employer on account of general manual
or mechanical labor. It provides, only, that when the prop-
erty of the debtor passes into the hands of an assignee or
receiver in the interest of creditors, and the estate is re-
duced to cash and ready for distribution, the laborer shall
be so preferred as to receive payment of his claim first in
point of time, and to the full amount, as against the claims
of general creditors. As a general rule, an assignee or re-
ceiver cannot acquire or exercise any greater title or rights
in and to the property committed to his control than the
insolvent or embarrassed debtor had and could enforce. An
assignor cannot transfer to his assignee a greater right than
he holds himself, and, as against a *bona fide* and valid en-
cumbrance upon his property, his assignment passes only
his equity of redemption in the property covered by the lien.
The equity of redemption is all that the assignee or receiver
may ordinarily sell and administer upon, and by the sale of
such equity, and any other property in his hands, the fund
is created for distribution out of which the assignee or re-
ceiver is directed by this statute to pay labor claims first
and in full after the payment of his own legitimate costs
and expenses." It thus appears that whatever may have
been the construction of this statute by the earlier Indiana
cases, the rule now adhered to in that jurisdiction is directly
opposed to the views expressed in the *Tammen case*.

Buck v. *Paine*, 50 Miss. 648, and 52 id. 271, are not au-
thorities in point. These decisions were rendered under a
statute of Mississippi which gave "a first lien, in law, upon
all agricultural products to secure the payment of the wages
of the laborer," and it was specifically provided in this stat-
ute that "this lien should operate against the landlord and
all other persons interested in such agricultural products."
It was held by the Supreme Court of Mississippi in the cases

above cited that this statute gave a specific lien, which the employer could not defeat by a mortgage executed upon the crops to be grown.

The only remaining authority that was relied upon in the *Tammen case* is *Reynolds* v. *Black,* 91 Iowa, 1. This case gave a construction to an Iowa statute similar to the statute that was before this court in the *Tammen case,* and the construction there given to the Iowa statute is the same as that given by this court in the *Tammen case.* So far as we have been able to find, this is the only decision that has not been reversed in the State wherein it was rendered that supports the *Tammen case,* and soon after the rendition of the decision in 91 Iowa the legislature of that State so amended its statute as to nullify the decision in the *Reynolds-Black case,* and that decision is no longer law in Iowa. Code of Iowa, secs. 4019, 4020; *Wells* v. *Kelly,* 121 Iowa, 577; 96 N. W. Rep. 1104.) On the other hand, Indiana, Missouri and New Jersey have decided directly the other way. *Fitzgerald* v. *Meyer,* 65 Mo. App. 665; *Hinkle* v. *Camden Safe Deposit and Trust Co.* 47 N. J. Eq. 333; *McDaniel* v. *Osborne, supra.*

In *Schwartz* v. *Messenger,* 167 Ill. 474, this court, in effect, passed on the question involved here, although the statute then before the court was a section of the Insolvent Debtors' act, which provided "that all claims for the wages of any laborer or servant which have been earned within the term of three months next preceding the making of such assignment * * * shall, after the payment of the costs, commissions and expenses of assignment, be preferred and first paid to the exclusion of all other demands and claims." Mr. Justice Baker, speaking for the court, there said: "The statute makes the claims of laborers preferred claims as against the general creditors, and not as against a *bona fide* purchaser for value. The funds referred to by the statute, and out of which said claims are to be paid, are funds properly in the hands of the assignee, and not funds to which

he is not entitled as against one claiming adversely to him. The money in question did not belong to the assignee, but to appellee." In the above case the distinction between a statute which creates a lien and one which merely gives a preference between creditors is clearly recognized. This distinction seems to have been overlooked in the *Tammen case,* and in so far as it is there held that the statute in question creates a lien superior to a pre-existing valid mortgage the same is disapproved.

Statutes intended to secure wage earners against loss of their earnings from insolvency of employers are based upon a sound public policy and should be liberally construed in order to accomplish the purpose of their enactment. But this rule cannot be invoked for the purpose of supporting a decision not based upon the letter or spirit of the legislative enactment. Up to this time the legislature has not created any such lien, but has made debts due for labor preferred claims against the property of the debtor and made claimants for wages preferred creditors and provided that they shall be first paid, which, as we have already seen, is quite a different thing from the creation of a statutory lien.

In the view we take of this case appellee has no right whatever, either in law or equity, to compel appellant to satisfy her claim against the Virginia Livery Company out of the property which he bought in good faith at a sale under a chattel mortgage, given for a *bona fide* debt long before any part of her claim accrued. This view makes it unnecessary to consider other errors assigned on the record.

The decree of the superior court of Cook county, and the judgment of the Appellate Court affirming the same, are erroneous and must be reversed.

*Judgment reversed.*

HAND, C. J., and CARTER, J., dissenting.