[No. 7923.]

CENTRAL SAVINGS BANK ET AL. V. NEWTON, RECEIVER, ET AL.

1. STATUTES—*Construction.* To a statute adopted from another state, and which had there been construed in the court of final resort, the general assembly added a proviso. *Held* to manifest a well defined purpose, and that the construction of the proviso should be consistent with such purpose. (154.)

2. RECEIVERSHIP—*Debts for Labor—How Far Preferred.* Under the proviso to sec. 3 of c. 70 of the Laws of 1903 (Rev. Stat., secs. 6998-7000), a mortgage duly recorded, and for a debt actually existing, takes precedence of claims for labor subsequently performed. (155, 156.)

The result is the same even though the proviso be rejected as insensible. (155.)

The act contains no provision as to the time in which exceptions to claims must be filed. (158.)

3. —— *Debts for Labor and the Like Allowed in Equity Against a Public Corporation in Preference to a Mortgage.* To warrant such allowance, the public character of the corporation must affirmatively appear. That the words ''Railroad Company'' are found in the corporate name is not sufficient. And it must be shown that the claims were valid and subsisting obligations of such corporations, when presented. (157.)

Even if specific objections be necessary, an objection assigning as ground that no evidence was produced to show what services, if any, were rendered, or that the court refused to hear testimony, ruling that the failure to file exceptions with the receiver barred all question, though there was no evidence as to when the claims were filed, or that the objecting party had notice of the filing, is sufficient. (157.)

4. MORTGAGE SALE—*Disposition of Proceeds.* The purpose of a foreclosure sale is to procure funds with which to pay creditors, according to their respective adjudged priorities, legal or equitable.

No creditor is to be displaced, or deprived of his right, without evidence of his consent to the preference of another. (158.)

*Error to Denver District Court.* Hon. HARRY C. RIDDLE, Judge.

Mr. S. E. MARSHALL, Messrs. PERSHING & TITSWORTH, for plaintiffs in error.

Messrs. GILLETTE & CLARK, Mr. E. M. SABIN, Mr. A. J. MARSH, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

This controversy arose in an action by The Central Savings Bank, Trustee, one of the plaintiffs in error, as plaintiff, against The Argentine Central Railway Company and certain judgment creditors, defendants, to foreclose a mortgage upon the property of such company, in which case the judgment rendered was finally reviewed by this court, *Booth, Trustee, et al. v. Central Savings Bank, Trustee,* reported in 146 Pacific Rep. 240. Upon allowing a supersedeas therein, an order was entered, permitting foreclosure sale by virtue of an agreement between the parties, in which it was directed that a certain portion of the purchase price realized be deposited with the clerk of the District Court, pending final adjudication, subject, however, to the payment from the fund of such proportion of preferred labor and salary claims, if any, as the District Court might allow, to be deducted before distribution. The property was accordingly sold to plaintiff in error Rogers for $5,000.00, but upon failure of confirmation thereof, because of objections and protests filed by defendants in error and other claimants, it was offered a second time and purchased by him for $20,002.00, which latter sale was confirmed.

During the progress of the foreclosure proceedings in

the District Court, James Q. Newton, one of the defendants in error here, was appointed receiver of the railway company. The other defendants in error are claimants against the foreclosure fund, whose respective bills for wages, salaries, services, materials, etc., were filed with the receiver and made a part of his report. The claims were all allowed, and adjudged prior to the mortgage lien, without the introduction of any evidence whatsoever upon them. Objections were filed by plaintiffs in error to the entry of judgment, which were overruled, and they prosecute this writ of error.

The statute enacted in 1903, entitled "An act to protect employes and laborers in their claims for wages, and to make the claims of employes and laborers preferred claims as against all other creditors," secs. 6998, 6999 and 7000, R. S. 1908, as applied to the present case, provides that upon the suspension of the business of any person, corporation, company or firm, by putting the same in the hands of a receiver, the debts owing to laborers, servants or employes, by reason of their labor or employment, shall be considered and treated as preferred claims, and such laborers and employes shall be preferred creditors; that a statement of claim, under oath, showing the amount due, the kind of work and when performed, shall be presented to the officer, person or court charged with such property, within sixty days; and that any person interested may contest any such claim, or part thereof, by filing exceptions thereto, supported by affidavit, with the officer having the custody of the property, whereupon the claim shall be reduced to judgment, in a court having jurisdiction thereof, before any part of it shall be paid. It also contains the following provision:

"That the provisions of the act shall not be construed to extend to creditors who held a duly recorded mortgage upon the property attached, which was given for a debt

actually existing from such mortgage before the labor was performed."

The statements of the claims of the various defendants in error were not filed in court by the receiver until some months after the sixty days required by statute for filing the claims with such officer has elapsed. No facts with reference to such claims appear, as no evidence was introduced at the hearing. The court below assumed that, as no contrary showing was made, the respective claims were filed with the receiver in apt time, and held that the objections put forward to them for the first time upon the hearing of an application for their allowance came too late, and that they were therefore confessed. It was further determined that, independent of statutory provision, the claims should be allowed under the rule of equity peculiar to railroad properties under receivership.

The first question is whether the statute cited gives a preference to claims specified therein over a lien of debts secured by mortgage described in the proviso above quoted, such as the one here involved. Plaintiffs in error contend that the most reasonable interpretation of the proviso is that the claims specifically mentioned in the act shall not take precedence over the debts of creditors secured by a mortgage, given for a debt actually existing before the labor for which the statutory preference is claimed was performed. Defendants in error urge that such construction would render the proviso contradictory and not germane to the title of the act, and that it should therefore be disregarded; that its language is so ambiguous as to render it incapable of construction; and that, in any event, its true meaning is that such mortgage creditors as therein described are not to be included among creditors given a right of priority by the statute.

When a business is suspended as contemplated by the statute certain claims therein specified are by its terms preferred for the purpose of payment. It is provided, in the

last section, that the act "shall not be construed to extend
to creditors" under a certain kind of mortgage.   While
such mortgage debts are not thereby declared, in direct and
positive terms, superior to the claims specified, the intent
is, however, clear and unmistakable that these latter claims
should not be given preference over the former.   The pro-
viso is certainly not an idle and meaningless expression of
the law-making power, and therefore a construction should
be given the language which will effect its evident purpose,
and at the same time harmonize it with the letter and spirit
of the act as a whole, which is, in our view of the matter,
that a mortgage such as therein described, being like the
one involved in this suit, is declared a prior and superior
lien to the claims for which specific provision is made.   It
is not apparent in what particular such construction is in
conflict with, or contradictory of, the title of the act.

The statute was adopted in 1903, and is precisely like
the one, excepting its proviso, enacted in Illinois in 1895.
The statute of the latter state had been twice construed by
its two appellate tribunals, *Heckman v. Tammen,* 84 Ill.
App. 537, affirmed in *Heckman v. Tammen,* 184 Ill. 144, 56
N. E. 361, in 1900, wherein it was held that the preference
of claims therein specified was absolute over previously ex-
isting mortgage liens.   Under these circumstances it is plain
that the legislature of our state had a well-defined purpose
in adding the proviso, the construction of which should be
consistent with such evident purpose.   However, in *Seymour
v. Berg,* 227 Ill. 411, 81 N. E. 339, 10 Ann. Cas. 340, decided
in 1907, *Heckman v. Tammen, supra,* was overruled, and it
was held, in substance, that the act merely placed the claims
of employes for labor in a preferred class, to be paid in pref-
erence to other simple contract creditors, and does not create
an express statutory lien superior to all other liens, without
reference to priority.   The court said at page 416 (10 Ann.
Cas. 340, 81 N. E. 341) :

"The clear intent of the legislature was to place debts due to employes for labor in a preferred class, and to require that such preferred claims should be paid in preference to other simple contract creditors who held no record liens. The fund out of which these preferred claims were to be paid is whatever interest the failing debtor has in the property or assets that go into the hands of the receiver or trustee. The court below and the Appellate Court have treated this statute the same as if it created an express statutory lien superior to all other liens, without reference to priority, that might exist against the property of the failing debtor. This view is not warranted by the language of the statute under consideration, in its original or amended form. The statute merely gives a *preference* to claims for labor or services,—which is quite a different matter from creating a statutory lien,—upon all of the debtor's property."

And further, at page 420 (81 N. E. 342, 10 Ann. Cas. 340) :

"Statutes intended to secure wage earners against loss of their earnings from insolvency of employers are based upon a sound public policy and should be liberally construed in order to accomplish the purpose of their enactment. But this rule cannot be invoked for the purpose of supporting a decision not based upon the letter or spirit of the legislative enactment. Up to this time the legislature has not created any such lien, but has made debts due for labor preferred claims against the property of the debtor and made claimants for wages preferred creditors and provided that they shall be first paid, which, as we have already seen, is quite a different thing from the creation of a statutory lien."

So that, even eliminating the proviso from consideration as too ambiguous to admit of reasonable construction, as urged by counsel for defendants in error, in the light of *Seymour v. Berg, supra,* which in our opinion states the law, the conclusion must be that under the statutory provis-

ions the claims in question are clearly subject to the lien of the mortgage. The case of *McDaniel v. Osborn*, 166 Ind. 1, 75 N. E. 647, 2 L. R. A. (N. S.) 615, 117 Am. St. 354, is additional authority in this connection, where, in construing a similar statute, it was said:

"There is a very clear and marked distinction between a preferred debt, and a debt secured by a specific lien. A general debt cannot become superior to another secured by a lien, unless expressly made so by a valid law; and, if a statutory lien is to be created, the language employed should be specific in declaring the fact, as well as the nature, character and extent of such lien. The construction contended for by appellants would require the court to infer the lien, and that it attached to this particular property, and super-seded a pre-existing valid mortgage. If such a result is within the meaning and intent of the statute, then, in case of an employer's insolvency, labor claims in amount unlimited, and bounded in time only by the statute of limitations, may be enforced against his estate to the displacement and exclusion of debts of unquestioned validity, secured by mortgage liens of many years standing. We are unable to ascribe such an intent to the legislature, or so to interpret this statute. The obvious purpose of the legislature in this enactment was to give laborers of the class named in the statute preference in the payment of their claims from the estate of the insolvent employer, in the same sense and to the same extent that preference is given in the payment of funeral expenses under the statute for the administration of decedents' estates."

Upon the proposition that the claims were properly allowed in equity, there can be no doubt that under some conditions claims of a certain kind and character against a going railroad, as a public or *quasi*-public corporation, might be thus preferred over prior mortgage liens. *First National Bank v. Wyman*, 16 Colo. App. 468, 66 Pac. 456. But the very existence of such a rule presupposes an affirmative

showing of facts sufficient to invoke and warrant its applica-
tion. The record fails to disclose that the railroad here
involved was a public or *quasi*-public corporation, or that it
had ever been operated as such. Moreover, there was no
attempt to show that these claims were valid and existing
obligations against the company at the time of presentment,
much less that they have any of the other attributes or
characteristics which would in equity entitle them to pref-
erence over the mortgage lien. This is necessarily true,
because they were adjudged confessed for failure to file
exceptions to their allowance within what was considered a
period of limitation. Counsel for defendants in error do not
dispute that a presentation of facts showing an appropriate
condition for the enforcement of the rule was essential to
its application, but urge that the objections filed to the entry
of judgment were not sufficiently broad or specific to raise
that question, that they did not come in time, and are there-
fore not now properly here for consideration. Even if it be
assumed that objections upon this specific ground were nec-
essary to preserve the rights of plaintiffs in error in this
respect, an examination of those interposed utterly refutes
the claim that the question was not properly raised below.
One of these objections is that no evidence was introduced
before the court to show what services, if any, were per-
formed by the parties; another is that the court refused to
hear testimony in regard to such claims, ruling that the
failure to file exceptions thereto with the receiver barred
those objecting from questioning them, although there was
no evidence before it as to the date when such claims were
filed with the receiver, or that those objecting had any notice
whatsoever that they had been so filed. Under such circum-
stances as here disclosed, the objections were sufficient to
raise the propriety of the allowance of the claims in equity,
notwithstanding, as suggested by counsel for defendants in
error, there was no offer of testimony upon which an objec-
tion on the ground of refusal to hear could be predicated.

The first intimation of an allowance of the claims upon equitable considerations appears in the findings of the court made at the hearing at which they were allowed. The statements of counsel for both sides made at the hearing show that the claims were asserted and opposed solely by virtue of the provisions of the statute. The objections, calling for a showing which would bring the claims within the equitable rule, upon which the court's findings were actually based, came at the earliest possible time, and it was reversible error to overrule them.

It seems that the exceptions to the claims were considered as not having been made within "statutory limitation," but since the statute upon which the allowance of the claims as preferred was based contains no provision as to the time in which exceptions thereto must be filed, it is apparent that in this respect the court below acted under a plain misconception of the law.

It is contended that the second sale was the result of objections filed to the first by some of the defendants in error; that the first sale was set aside for the express purpose of providing, by re-sale at a guaranteed higher price, a fund for payment of certain wage claimants; and that plaintiffs in error, having participated in the second sale, are for these reasons estopped to question the judgment entered herein. It is sufficient to say upon this score that there is nothing to show that plaintiffs in error in any way consented or acknowledged that the proceeds of either sale should go to pay any particular class of creditors. The purpose of such a sale is to procure funds with which to pay creditors according to their respective adjudged legal or equitable priorities, and cannot be lawfully otherwise applied. There was no act on the part of plaintiffs in error which deprived them of their right to question the judgment and decree.

The judgment is accordingly reversed and the cause remanded, with directions to permit the defendants in error,

if so advised, an opportunity to undertake to establish that their claims should be allowed and approved for payment under the equitable rule concerning railroads under receivership.

*Judgment reversed and cause remanded with directions.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE WHITE concur.