E. A. SNYDER, Appellant, v. J. F. CARSON, A. L. SEBILLE and J. F. DOBBYN, Defendants. F. O. JACKSON, Intervenor and K. F. MATHEWS and DeETT PIERCE, Labor Claimants.

**Landlord and tenant:** LABOR LIENS: PRIORITY. Claims of employees
1 for labor performed within ninety days prior to an attachment of property for rent are superior to the landlord's lien.

**Same.** Where chattel mortgages of a tenant were foreclosed pend-
2 ing a landlord's attachment of the property for rent, the title

of the purchaser at the sale was inferior to the claims of employees of the tenant for labor, performed within ninety days preceding the attachment; and also inferior to the landlord's lien.

**Same:** PARTIES. Where the controversy was simply whether a landlord's lien for rent was prior to the interest of a purchaser of the property under foreclosure of chattel mortgages executed by the tenant, the issue could be determined although the tenant was not a party to the controversy.

*Appeal from Black Hawk District Court.*—HON. F. C. PLATT, Judge.

SATURDAY, JUNE 8, 1912.

ACTION for rent due, aided by landlord's writ of attachment, levied on the property kept by the tenants in the leased premises. K. F. Mathews and DeEtt Pierce served notices of claims for labor performed within ninety days. F. O. Jackson filed a petition of intervention, in which he asserted title to the property under the foreclosure of two chattel mortgages and tendered in court an amount equal to the rent due. The court ordered the labor claims paid therefrom and the remainder turned over to plaintiff and taxed the costs against Jackson save those incident to the presentation of the labor claims which were taxed to plaintiff. The plaintiff appeals.—*Reversed* on rehearing.

*Hemenway & Martin* for appellant.

*W. H. Merner* for appellee F. O. Jackson.

*J. B. Newman* for appelles K. F. Mathews and De-Ett Pierce.

LADD, J.—The plaintiff leased to Carson and Sebille certain premises belonging to him situated in Cedar Falls

for a term of five years beginning February 1, 1904. The lessees occupied these in carrying on the business of printing, and for that purpose kept therein presses, type, fixtures, machinery and the like. On May 1, 1905, Sebille executed a chattel mortgage on his undivided one-half of the property to F. O. Jackson to secure the payment of a promissory note for money loaned him. Subsequently Carson sold his interest in the property to H. A. Smith, and the latter executed a chattel mortgage thereon to H. C. Hemenway. Later Sebille and Smith sold the entire property to J. J. Dobbyn, who assumed the payment of the mortgages, but, thereafter being in failing circumstances, closed the plant. The petition was filed June 15, 1909, alleging the execution of the lease and praying judgment against Carson and Sebille for $195 with interest and for $75 with interest against Dobbyn, and a landlord's writ of attachment was levied on the printing outfit contained in the building. Jackson filed a petition of intervention September 21, 1909, in which he alleged the execution of the mortgage by Sebille to him; that foreclosure proceedings thereon were begun June 15th of that year and on July 15, 1909, the same sold thereunder, and a bill of sale thereof issued to the intervener; and that the title so acquired was superior, "as respects the rental of said premises accruing on and after the expiration of plaintiff's lease, February 1, 1909." Notice by K. F. Mathews was filed July 17, 1909, in which he alleged that, within ninety days prior to the levy of the writ of attachment and the beginning of foreclosure proceedings by Jackson, he had performed labor in the printing establishment for which wages amounting to $69.75 were owing him. A similar notice by DeEtt Pierce was filed, and both were properly served. Attached to these notices were objections by Jackson denying the correctness of same, saying that his interest in the property was not liable for more than one-half such claims, that the entire property had been seized under plaintiff's

writ of attachment, and praying that the matter be trans-
ferred to the district court for adjustment between the
parties.   Later he amended these objections by asserting
that claimants had served no notice upon the foreclosure
of Hemenway's mortgage, hereinafter mentioned, the re-
cording of his own mortgage, and that chapter 204 of the
Acts of the Thirty-Third General Assembly is not retro-
active.   Otherwise these notices were not then contro-
verted, and no answer or other pleading was interposed
to the original petition or to the petition of intervention.
By agreement, the issues were heard at the same time and
the facts as recited stipulated.   It was also stipulated that
Mathews and Pierce had performed labor, and wages were
due them from Dobbyn as claimed in their notices, and
also that out of the foreclosure sale by Jackson $105.53 of
the proceeds was deposited with the clerk of court at the
time his objections to the labor claims were filed.   Jackson
admitted priority of the plaintiff's landlord lien over his
mortgage lien to the extent of that sum, but did not con-
cede priority to any greater amount.   Thereupon Jackson
amended the petition of intervention by alleging the
superiority of his interest in and title to the property as
respects all rents claimed by plaintiff which became due
prior to February 1, 1908.   Plaintiff amended the peti-
tion by saying that, since the beginning of the suit, Hemen-
way had foreclosed the mortgage executed by Smith and
bought in an undivided half of the property attached and
had transferred the same to Jackson, "who thus became,
about January 1, 1910, the entire owner thereof," and as
defendants Carson, Sebille, and Dobbyn had parted with
their interest therein, dismissed the cause as to them and
elected to prosecute the cause against the intervener, Jack-
son, and prayed "judgment establishing the rights of the
several parties as follows: (1) That the plaintiff have a
first lien upon said printing plant for the sum of $119.97,
and that special execution issue for the sale of the attached

property to pay the amount of such lien, with interest and costs; any sum remaining to be paid to the other parties hereto as their priorities may be adjudged." Intervener then introduced in evidence the return of the foreclosure proceedings on the mortgage executed by Sebille to him, and it was admitted he had become sole owner of the property subject to the levy of attachment and upon which the labor claimants ask liens. The parties then agreed that plaintiff should waive one-half month's rent, and intervener should concede his right to interest, and "that plaintiff was entitled to $114 as the full amount of his claim." Intervener's attorney increased the amount on deposit to $114 by handing the clerk $8.17 ,and modified the amount to which the landlord's lien was previously admitted to be superior to $114.

Such are the facts, deduced from the evidence and several stipulations of the parties. The propriety of prosecuting the action in the absence of debtors is not questioned and though the intervener, Jackson, deposited $114 with the clerk of court as the amount due on plaintiff's claim for rent, there is nothing in the record to indicate that because of this the levy of the writ of attachment was released, or that plaintiff waived his landlord's lien on the attached property. See section 2992 et seq., Code.

But such lien did not exclude the wage claims of Mathews and Pierce. Section 4019 of the Code provides that: ". . . When the property of any person shall be seized upon by any process of any court . . . for the purpose of paying or securing the payment of the debts . . . of such person, the debts owing to employees for labor performed within ninety days next preceding the seizure or transfer of such property, to an amount not exceeding $100 to each person, shall be a preferred debt and be paid in full." The next section defines the procedure in presenting such a claim, and declares that, "unless objection be made thereto

1. LANDLORD AND TENANT: labor liens: priority.

as provided in the following section, such claim shall be allowed and paid to the person entitled thereto," out of the proceeds of the property. Section 4021 provides for contesting such claims by any person interested, and section 4022 reads: "Claims of employees for labor, if not contested, or if allowed after contest, shall have priority over all claims against or liens upon such property, except prior mechanics' liens fon labor in opening or developing coal mines as allowed by law." Such claims are superior to the landlord's lien for rent. *Stuart v. Twining*, 112 Iowa, 154.

And as the language employed should be given a fair construction, they are also superior to the lien of a chattel mortgage. The intervener did not acquire the property by foreclosure until after the property was seized under the writ of attachment, so that his title through the respective foreclosures is subject to the preference given labor claims by this statute. *Wells v. Kelley*, 121 Iowa, 577, contains nothing to the contrary. That decision went no farther than to say that section 4019 of the Code, prior to its amendment by chapter 204 of the Acts of the Thirty-Third General Assembly, did not authorize the assertion of preference to labor claims upon foreclosure of a chattel mortgage by notice and sale; that this could only be done when seized under process of court or in the hands of receiver, trustee, on assignee.

2. SAME.

Mathews and Pierce, then, were entitled to be first paid their claims for wages earned, and there was no error in directing them to be paid from the funds in the hands of the clerk. What remained also, was rightly applied on the amount conceded to be owing plaintiff for rent; but this left $105.47 thereof unpaid. On what theory can it be said that this should not be made out of the property attached? The payment of an insufficient amount into court certainly did not have the effect of dissolving the levy. Nor did the establishment of the labor claims as preferred de-

prive plaintiff of the right to enforce his lien against such
of the attached property as remained after satisfying these.
The mortgages foreclosed against the property were inferior
to the lien of the levy of the writ of attachment, so that
the intervener's title thereto was subject to such lien, and
it was stipulated that "plaintiff was entitled to $114 as the
full amount of his claim."

There was no controversy, then, as to the amount
owing plaintiff as rent, nor as to this being a lien on the
attached property, and the denial of relief must have been

3. SAME: parties.

on the ground that the debtors were not
parties to the action; it having been dis-
missed as to them. Had they any interest therein
which might be adversly affected there would be
much · in this suggestion, for it is fundamental
that a person may not be divested of his property in
a proceeding to which he is not a party. *Moore v. Held,*
73 Iowa, 538; *Tod v. Chrisman,* 123 Iowa, 693. Here
the amount of indebtedness is conceded, and the only con-
troversy is whether the lien of plaintiff or rent is prior
and superior to intervener's interest in the property acquired
under the chattel mortgage foreclosures, and this may be
adjudicated in the absence of the debtors. *First National
Bank v. Jasper County Bank,* 71 Iowa, 486. See, also,
*Hubbard v. Ellithorpe,* 135 Iowa, 259. If the lien is
established prior to such interest, the debtors may have
their indebtedness satisfied; but this merely would afford an
advantage to them which they would not be in a situation
to insist upon, and the mere fact that a benefit may accrue
to any one does not render such person an essential party
to the litigation. Moreover, the point that the debtors
were not continued as parties does not appear to have been
raised in the trial court or in appellee's argument in this
court; it being assumed that the money in court was the
only property in controversy. There might be much in
this had the property been purchased under foreclosure

sales by parties other than the intervener in this action. His manipulation thereof, however, could not well obviate the issues being litigated, and we think decree should have been entered establishing plaintiff's lien on the property for the sum of $105.47 and directing special execution to issue for the satisfaction thereof and costs.—*Reversed.*

DEEMER, J., dissenting.