[No. 17339.   Department Two.   November 22, 1922.]

*In the Matter of the Improvement of Cliff Avenue.*
THE HOTEL COMPANY OF TACOMA, *Respondent,*
v. THE CITY OF TACOMA, *Appellant.*[1]

MUNICIPAL CORPORATIONS (264)—PUBLIC IMPROVEMENTS—ASSESSMENTS—APPEAL—TIME FOR—STATUTES—CONSTRUCTION.   An appeal from an assessment roll taken after an ordinance was adopted but before the expiration of ten days required for publication of the ordinance, was not premature, under Rem. Comp. Stat., § 9374, requiring that the appeal "shall be taken within ten days after the ordinance affirming such assessment roll shall become effective"; since the word "within" ten days after the statute becomes effective means prior thereto, and was not intended to limit this period necessarily to the period contended for.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered March 7, 1922, upon findings in favor of the plaintiffs, reducing an assessment for a public improvement, tried to the court. Affirmed.

*J. Chas. Dennis, Percy P. Brush,* and *D. D. Schneider,* for appellant.

*Burkey, O'Brien & Burkey,* for respondent.

HOVEY, J.—The property of respondent was assessed in the sum of $2,706.85 for its proportionate share of

[1]Reported in 210 Pac. 676.

the cost of a street improvement constructed by appellant city. Upon appeal to the superior court, the assessment was reduced to the sum of $1,082.74.

The north and south streets of the city of Tacoma named from east to west and involved in this proceeding are A street, Pacific avenue, Commerce street and Broadway. The east and west streets, numbered from north to south, begin with Seventh street at the north and run to Seventeenth street. Pacific avenue is the main business street of the city and forms the principal artery connecting with the roads leading from the city. Prior to the improvement in question, Pacific avenue did not have any direct connection on its northern portion with a large section of the city comprising some of the best residential section, and in particular the stadium. But its north end was limited to the property on the tide flats and any travel not destined for the latter place was obliged to cross over to Commerce and Broadway streets at Ninth street or points south. The eastern side of this portion of the city terminates in a steep bluff cutting off both ends of A street and leaving the latter on its east side but four fractional blocks in length in which the property is subdivided into lots. As originally platted, Cliff avenue was a street running along the edge of the bluff to the east of A street, and the property of respondent comprises block 901 as platted and the vacated portion of Cliff avenue lying to the east of that block. This vacated street drops below the level of the block and overhangs the bluff and is used as a garden to the rear of the hotel situate upon block 901. To the east of Pacific avenue and north of Seventh street the edge of the bluff angles to the west, and as platted, Cliff avenue continued around this edge of bluff, but had not, prior to the improvement, been opened up between its intersection with Pacific avenue

for a distance of some blocks, and to the north of these blocks it was an unimproved street.

The improvement consisted of the paving of Cliff avenue from its intersection with Pacific avenue to the stadium, and included a long concrete bridge over a gulch shortly after leaving Pacific avenue, a stairway leading from the improved street to Commerce street, and a concrete retaining wall at the foot of the gulch crossed by the bridge. This wall was not directly connected with the paving, but was intended to serve as the toe of a fill which was expected to take place through the voluntary deposit of surplus earth in the gulch as a result of building operations in other parts of the city, and it is assumed that such a fill will eventually replace the supports needed for the bridge. The proof shows that the only immediate benefit of such a fill would be to the abutting property. The cost of the ordinary paving was assessed to the abutting property. The expense of the bridge and its approach on Pacific avenue, the stairway and the concrete retaining wall, aggregating some $98,000, was assessed to an enlarged improvement district comprised of the property lying to the east of Commerce street and running from Seventh street on the north to Seventeenth street on the south. This enlarged district was subdivided into zones running from north to south, with the assessment growing lighter as it approached its southern terminus, but there was no subdivision of zones from the west to the east. There are double street car tracks upon Pacific avenue and upon the portion of A street between Seventh and Ninth, and the portion of Seventh street between A street and Pacific avenue, and an interurban terminal is situated to the north of Eighth street and the interurban cars travel in a loop on the route mentioned. There is testimony to the effect that these cars often

stand at the intersection of Eighth and A streets and
the use of the tracks by these and other cars render this
portion of A street less desirable for automobile traffic.
The evidence is clear that A street, while occupied by
certain classes of business, is not as desirable business
property as Pacific avenue, and that property situated
on both sides of A street is far less valuable than the
property on Pacific avenue.  The assessment was com-
puted according to the number of square feet embraced
within each piece of property, and the entire property
of respondent was assessed at the same rate as blocks
703, 803, and 903 on the east side of Pacific avenue, and
at one-half the rate assessed upon the blocks in the
same zone on the west side of Pacific avenue, the latter
being assessed at a higher figure because the buildings
situate upon it had entrances upon both Pacific avenue
and Commerce street.

At the time of the trial, respondents moved to dis-
miss the appeal to this court, but in view of the opinion
we have formed upon the merits we find it unnecessary
to pass upon this motion.

Appellant moved for a dismissal of the proceedings
upon the ground that the appeal by respondents to the
superior court from the ordinance levying the assess-
ment was not made within the time prescribed by law.
The ordinance affirming the assessment roll was
passed October 19 and published October 20, 1921, and
was required to be published ten days.  Section 9374,
Rem. Comp. Stat., provides that the appeal shall be
taken within ten days after the ordinance becomes
effective, so that it will be seen that the real ground of
appellant's objection is that the appeal was premature.

Respondent contends that the ordinance was in effect
from the time of its passage, and the language of the
charter provision leaves the question doubtful, but we
are of the opinion that, even if ten days were allowed

for appeal after the expiration of the ten days' publication, the notice would still be good, as "within" in this case means prior to and is not intended to limit the period necessarily to the ten-day period contended for.  The ordinance in this case had been passed on October 19 and the city council had finished with the subject.  The notice of appeal was given on the 26th of October, and at that time there remained no uncertainty respecting the subject-matter sought to be reviewed.  Appellants cite *Goetter v. Colville,* 82 Wash. 305, 144 Pac. 30, where the notice of appeal was given on October 23, from an ordinance passed on October 7, the time for appeal being ten days, and in which case also appellant failed to supply the record required by the statute, but we do not consider that case in point here, as the present question was not involved.

We have held on appeals from the superior court to this court that a notice of appeal is premature if given before judgment is entered, and that upon the ground that there is no judgment to appeal from.  *Bartlett v. Reichennecker,* 5 Wash. 369, 32 Pac. 96; *Robertson v. Shine,* 50 Wash. 433, 97 Pac. 497; *Inman v. Seattle,* 86 Wash. 603, 150 Pac. 1055.  That the use of the word "within" itself is not necessarily limited to the time preceding the commencing of the period named, but that it does fix the termination of the period is the result of several decisions cited in vol. 4, Words and Phrases (2d series), p. 1326, and two of the cases there cited, *In re Wittkowsky's Land,* 143 N. C. 247, 55 S. E. 617; *Belion v. Durand,* 39 Utah 532, 117 Pac. 798, are squarely in point with this case.

On the merits the testimony was conflicting, but the conflict chiefly existed in the opinions of the witnesses as to the benefit conferred upon respondent's property by the improvement.

There was no substantial dispute as to the facts. We have held in several cases that it is the duty of the court to pass upon the question of benefits and the extent of the same, and without reviewing the testimony in detail we are satisfied that the trial court did not give respondents greater relief than the facts warranted and in fact required. *Vancouver v. Corporation of Catholic Bishop of Nisqually,* 90 Wash. 319, 156 Pac. 383; *Horton Investment Co. v. Seattle,* 94 Wash. 556, 162 Pac. 989.

The judgment is affirmed.

PARKER, C. J., FULLERTON, MAIN, and TOLMAN, JJ., concur.