[Civil No. 4236. Filed February 10, 1941.]

[110 Pac. (2d) 229.]

OEHLESE W. PRYOR, Plaintiff, v. PRYORS, PRINTERS, a Corporation et al., Defendants.

BLAKE, MOFFIT & TOWNE OF ARIZONA, a Corporation (Intervenor-Defendant), Appellant, v. CHAS. W. SLADE, CLIFFORD S. PRYOR and AUSTIN H. PEASE (Wage Claimants), Appellees.

Messrs. Rawlins & Rawlins and Mr. Arthur M. Davis, for Appellant.

Mr. Thomas W. Glenn, for Appellees.

McALISTER, J.—The question presented by this appeal is whether a claim for wages filed pursuant to section 62–215, Arizona Code of 1939, or the lien of a chattel mortgage has priority. It arises out of the following facts.

The administratrix of the estate of Harry B. Prior brought an action against Pryors, Printers, a corporation, and others, on July 27, 1937, in which she sought recovery of $2500, the establishment of an agreement dated July 9, 1934, as a lien on certain printing equipment of the defendants, and the foreclosure of that lien.

Blake, Moffit & Towne of Arizona, a corporation, having obtained permission of the court to intervene in the case as a defendant, filed an answer and a cross-complaint on August 24, 1938. In the former it alleged that any rights plaintiff might seek to enforce under the agreement of July 9, 1934, were inferior and subordinate to the rights of intervenor which arose under a note in the sum of $1,600 executed by Pryors, Printers, a corporation, on October 16, 1937, to Blake, Moffit & Towne of Arizona, a corporation, and was secured by a chattel mortgage on the same printing equipment as that on which plaintiff claimed a lien. This note was a renewal of one dated October 26, 1931, between the same parties that had been secured by a chattel mortgage under that date on the same printing equipment. Both mortgages were placed of record a day or so after they were executed.

The cross-complaint of intervenor-defendant sought judgment against Pryors, Printers, for the sum of $1,350, as the balance due on the promissory note dated

October 16, 1937, and for the foreclosure of its lien under its chattel mortgage of the same date against the plaintiff and all defendants.

On October 11, 1939, a decree in favor of intervenor for the relief prayed for and also in favor of plaintiff for $2,500 was entered. It provided that as between the respective liens of the plaintiff and the intervenor, the latter was entitled to the first $448.53, the plaintiff to the next $2,500, and the intervenor to the remainder due it. The court decreed a foreclosure of the liens and a sale of the property pursuant to which a special execution and order of sale was issued October 13, 1939, directing the sheriff to sell the property described in the decree, notice designating October 25, 1939, as the date and the premises of the defendant as the place of sale being properly posted. On October 19, 1939, Chas. W. Slade, Clifford S. Pryor and Austin Pease gave the parties to the action and the sheriff of Maricopa county notice of their claims for wages due for labor performed by them for Pryors, Printers, within sixty days next preceding the levy of the writ, namely, $172.80, $169.02 and $50, respectively. Each of these notices was verified by the claimant, and given pursuant to the provisions of section 62–215, Arizona Code of 1939, reading as follows:

*"Wages to take priority over attachments and levies.—Procedure.* In case of levy under execution, attachment, and like writ except where such writ is issued in an action under this article, any miner, mechanic, salesman, servant or laborer who has a claim against the defendant for labor done, may give notice of his claim, sworn to and stating the amount thereof to the creditor and defendant debtor, and to the officer executing the writ, at any time within three (3) days before the sale of the property levied on. Such officer shall file such statement with the clerk of the court issuing the writ, and unless the claim be disputed by such debtor or creditor before sale, such officer shall pay the claimant out of the proceeds of the

sale the amount he is entitled to receive for such services rendered within sixty (60) days next preceding the levy of the writ not exceeding the sum of two hundred dollars ($200) to each claimant; and upon the failure of the officer to do so, he shall be liable to the claimant therefor. Such claim may be disputed by the debtor or creditor, or any lienholder, in writing, specifying the reasons for disputing the same, verified and delivered to the officer before the sale, and shall by him be filed in the court issuing the writ. The officer shall, out of the first money received, pay all claims not disputed. If the total amount of all the claims presented exceeds the amount derived from such sale, the officer shall pay to the holders of such undisputed claims their *pro rata* of such money, and shall pay the *pro rata* amount of the disputed claims, together with such sum for costs as the court may order, into court. The court shall cite all parties interested to appear, and in a summary manner determine the validity of the disputed claim and direct the officer in distributing the proceeds of sale.''

Subsequent to October 19, 1939, and before the date of sale, the intervenor asked the court to strike the notices of claims for wages and this was denied.

The property was sold by the sheriff on October 25, 1939, to one B. Vogel for $475, the highest bidder, and two days later the sheriff transmitted $391.82, the total of the three wage claims, to the clerk of the superior court to be held pending a decision by the court as to who was entitled to it. Later the intervenor and wage claimants appeared in the superior court to have their respective rights determined in a summary manner and some weeks following this hearing the court entered its order allowing the wage claims in the amounts sought. The intervenor-defendant, being dissatisfied with this order, has brought it here for review.

██ Some time after the appeal was lodged in this court appellee, Chas. W. Slade, filed a motion to dismiss it upon the ground that under section 4, article

VI of the state Constitution, the court did not have jurisdiction to entertain it for the reason that the amount in controversy between him and appellant was less than $200 and the action did not involve "the validity of a tax, impost, assessment, toll, municipal fine, or statute." The court postponed consideration of the motion until the appeal should be taken up on its merits. The contention of appellee is that because the matter in controversy between the parties to the original action, as well as that between the plaintiff and intervenor, had been settled satisfactorily in the trial court, no appeal having been taken in either instance, the only controverted matter involved in the appeal is that between the wage claimants and the intervenor, and that since these claims were severally and individually filed, they constituted separate and distinct controversies, each of which involved less than $200. The language of the Constitution is that the court has no jurisdiction "where the *original* amount in controversy" does not exceed $200 but in the dispute between the plaintiff and defendant the original amount was $2,500 and in that between the plaintiff and the intervenor in his cross-complaint it was $1,350. This brings the amount within the terms of the Constitution and gives this court jurisdiction. Section 62–215, *supra,* requires that any dispute between a lien-holder and a wage claimant be determined in a summary manner and the proceeding in which this is done is necessarily supplemental to the main action. Hence, it would appear that the principle announced in the case of *Byers* v. *Comer,* 50 Ariz. 8, 68 Pac. (2d) 671, that jurisdiction of this court in actions at law for the recovery of money is determined by the amount in controversy in the main action, $707.23 in that instance, and not by the amount of the judgment against the garnishee, $54.18, is applicable here. This hold-

ing was based upon the ground that a garnishment proceeding is in aid of the principal action and, as we see it, the supplemental summary proceeding provided for in section 62–215, being merely ancillary to the main action, is also for the purpose of aiding its enforcement as well as for helping the wage claimant secure his right.

 ██ It is clear from section 62–215 that in those cases in which there has been a "levy under execution, attachment, and like writ" any miner, mechanic, salesman, servant or laborer who has a claim against the defendant for labor done is given priority of payment for the services rendered within the sixty days next preceding the levy of the writ, not exceeding $200. Appellant does not deny this but contends that an analysis of the quoted expression discloses that it refers to sales under general executions and was never intended to apply to those under special execution such as that issued in this case, its chief reason for this view being that a levy under a general execution is a condition precedent to a sale thereunder, while no such levy is required where a sale is made under a special execution. To support the position that no levy is required under special executions, appellant relies mainly on section 24–110, Arizona Code of 1939, which provides that "if the party recovering the judgment has a lien on any property by mortgage or otherwise, or by the levy of any writ of attachment or garnishment, no further levy upon such property shall be necessary, but the same may be sold without further levy." This does not state that there shall be no levy but "no *further* levy," the implication being that all property upon which the judgment creditor has a lien, whether that lien has been created by virtue of a mortgage, attachment or garnishment, is already under levy and that it is unnecessary to place a further levy on it. Notwithstanding this implication, it is clear

that property upon which the judgment creditor has a mortgage lien is not under levy prior to the issuance of an execution, because that lien is created by the parties themselves when they enter into the mortgage contract, while an attachment or garnishment lien comes into being upon the levy of a proper writ issued by the court. However, the purport of the section is that no levy on property upon which the judgment creditor has a mortgage lien is necessary any more than in case of an attachment, the reason therefor evidently being that the lien holds the property for him and prevents anyone else from obtaining title to it except through foreclosure. Yet, section 21–1225, Arizona Code of 1939, provides that judgments foreclosing mortgages and other liens shall be that the plaintiff recover his debt, that his lien on the property subject thereto be foreclosed, and that "a special execution issue to the sheriff or any constable of the county where such property may be, *directing him to seize and sell the same as under execution,* in satisfaction of the judgment." (Italics ours.) This direction was incorporated in the judgment in this case and also the special execution issued pursuant thereto, and the return of the sheriff shows that he complied with it. The order to seize and sell the printing equipment as under execution was a direction to the sheriff to seize and sell that property as he would seize and sell it under an execution. A phrase identical with this in meaning, "as upon execution," and used in the same connection, was held, in *Brownfield* v. *Weicht,* 9 Ind. 394, to show plainly "a legislative intention that the law regulating sales on execution should apply to, and in all respects govern, sales under a decree of foreclosure." But whether, in view of section 24–110, *supra,* this expression requires the making of a formal levy, it unquestionably does point out the manner in which the officer shall seize

and sell the property, and a seizure made pursuant thereto is in effect a levy.

Appellant contends, however, that there was no seizure of the printing equipment by the sheriff; that he did not take possession and control of it before selling it. The duty of the officer under the statute is clear but whether he complied with its terms in all respects in carrying out the judgment to seize and sell is immaterial here, since the validity of the sale is not questioned, the contention of appellant being that no levy was made because none was required.

Even if this were not true, we think it clear from a reading of section 62–215 that the legislature intended by the expression "in case of levy under execution, attachment, and like writ" to include all cases in which the property of the employer is taken and sold under judicial process to satisfy his debts. This is indicated by the fact that in paragraph 2930, Revised Statutes of 1901, and in paragraph 3679, Revised Statutes of 1913, which were carried into the 1928 Code as section 2034, being 62–215 of the 1939 Code, and gave the same relief as that section does, the language was "in cases of execution, attachment and writs of similar nature," the word "levy" not appearing at all. And the same is true of this section as it originally became a part of the Statutes of the Territory of Arizona, chap. 10, Session Laws of 1889.

Sale of the property was noticed by the sheriff for October 25, 1939, and six days prior thereto, October 19, the several claims were filed with the proper parties. Appellant contends that this was not within time, because it was not "within three days before the sale of the property levied on," as required by section 62–215, and he assigns as error the refusal of the court to dismiss the claims upon this ground. The action of the court was correct, for under the authorities the word "within" when used in connection with the word

"before" should be construed to mean "not later than," or "at any time not less than." *Royal Grocery Co.* v. *Oliver,* 57 Cal. App. 278, 207 Pac. 61, 62; *United States* v. *Sena,* 15 N. M. 187, 106 Pac. 383; *Harmon* v. *Hopkins,* 116 Cal. App. 184, 2 Pac. (2d) 540; *The Hotel Co. of Tacoma* v. *City of Tacoma,* 122 Wash. 335, 210 Pac. 676; *Davies* v. *Miller,* 130 U. S. 284, 9 Sup. Ct. 560, 32 L. Ed. 932. The last line and a half of the first sentence of this section should, therefore, be construed as though it read that the claims may be filed "at any time, not later (or less) than three days before the sale of the property levied on." This gives the debtor, creditor or lienholder at least that much time to investigate the claim and dispute it before the sale if he so desires, and this was evidently its purpose.

The principal contention of appellant is that the rights conferred upon "any miner, mechanic, salesman, servant or laborer" by section 62–215 are made subordinate to pre-existing recorded mortgage liens by the provisions of section 62–213, Arizona Code of 1939, which reads as follows:

*"Preference over subsequent encumbrances.*—The liens provided for in this article, unless otherwise herein provided, are preferred to all liens, mortgages or other encumbrances which have attached upon the property, subsequent to the time when the labor was commenced or the materials commenced to be furnished, also to all liens, mortgages and other encumbrances of which the lienholder had no notice, actual or constructive, at the time he commenced the labor or commenced to furnish the materials."

If the preference rights given workers by section 62–215, *supra,* are governed by this provision, appellant's contention is correct because appellees had constructive notice of the lien of appellant when they rendered the services, since the original chattel mortgage on the printing equipment was recorded in October, 1931, and its renewal in October, 1937, while the work

was performed by appellees subsequent to August 14, 1939. Appellees contend, however, that section 62–213 refers only to the liens of mechanics and materialmen on real estate and has no application to the liens created by section 62–215 in favor of workers. If appellees be correct in the contention that the rights created by this section in favor of wage earners are liens and not merely preferred rights to payment out of certain proceeds, we think section 62–213 does apply because it and 62–215 are both a part of article II, of chapter 62, and there appears no reason why all liens created therein are not included within the purview of the word "article" as used in the expression "liens provided for in this article" in section 62–213. And this being true, such liens would be superior only to that of any mortgage that might have been placed on the printing equipment subsequent to the commencement of the labor of appellees or to one that existed prior to the beginning of their labor but of which appellees had no notice, actual or constructive. It is contended by appellant, upon the other hand, that 62–215 gives merely a preferred right and does not create a lien and that a mere prior right to payment out of the proceeds of a debtor's property, or even a lien, cannot displace a specific pre-existing mortgage lien thereon in the absence of a definite and unmistakable statutory provision to that effect. While there is a clear distinction between a preferred right and a specific lien it is unnecessary, as we view it, to determine which is given by section 62–215, for the reason that, if it is a lien, section 62–213, subordinates it to a pre-existing mortgage, and, if it is a preferred right only, or should even be treated as a lien, it does not displace the specific lien of a prior mortgage unless the language providing for it clearly shows this to be the legislative intent. In 16 R. C. L. 507 is found this statement: "To protect the wages of employees, a

variety of constitutional provisions and statutes have been adopted. . . . The liens given by such statutes are subordinate to prior liens such as chattel mortgages, unless a different rule of priority is expressly prescribed.''

Among such statutes is that of Utah, Laws Utah 1892, c. 30, § 1, which provides that when a corporation is suspended by its creditors or put in the hands of a receiver the debts owing to ''laborers or servants'' for work performed within six months next prior to the seizure ''shall be considered and treated as preferred debts . . . and shall be first paid in full,'' and in *Salt Lake Lithographing Co.* v. *Ibex Mining & Smelting Co.,* 15 Utah 445, 49 Pac. 832, the court held that this did not affect the right of existing mortgagees or lienholders. In the following decisions the same rule has been announced in considering statutes giving wage claimants the same rights: *Fitzgerald* v. *Meyer,* 65 Mo. App. 665; *Hinkle* v. *Camden Safe-Deposit & Trust Co.,* 47 N. J. Eq. 333, 21 Atl. 861; *American Type Founders' Co.* v. *Nichols,* 110 Tex. 4, 214 S. W. 301; *McDaniel* v. *Osborne,* 166 Ind. 1, 75 N. E. 647, 2 L. R. A. (N. S.) 615, 117 Am. St. Rep. 354; *Seymour* v. *Berg,* 227 Ill. 411, 81 N. E. 339, 10 Ann. Cas. 340; *Schmidtman* v. *Atlantic Phosphate & Oil Corp.,* 2 Cir., 230 Fed. 769. In the last case the New York statute was construed by the Circuit Court of Appeals, since the state courts had never been called upon to consider it. In two of these cases, *McDaniel* v. *Osborne* and *Seymour* v. *Berg, supra,* the court overruled former decisions by them in which the view urged by appellees here had been taken. One of these earlier cases, *Heckman* v. *Tammen et al.,* 184 Ill. 144, 56 N. E. 361, is relied on largely by appellees, a lengthy excerpt from it appearing in their brief, but in *Seymour* v. *Berg, supra* [227 Ill. 411, 81 N. E. 342, 10

Ann. Cas. 340], the court said of it that "in so far as it is there held that the statute in question creates a lien superior to a pre-existing valid mortgage, the same is disapproved."

The only other cases cited by appellees holding that a preferred claim for wages is superior to a prior existing mortgage are from Iowa, Arkansas and Georgia. An examination of the statutes of Iowa on this point discloses that they are materially different from those in Arizona and the decisions relied on, *Reynolds* v. *Black,* 91 Iowa 1, 58 N. W. 922, and *Soodhalter* v. *Reliance Coal Co.,* 203 Iowa 688, 213 N. W. 213, were properly decided thereunder. The statutes of that state section 11717 of its 1924 Code, provide that when the property of any corporation shall be seized upon by the process of any court for the purpose of paying its obligations, "the debts owing to employees for labor performed within the ninety days next preceding the seizure or transfer of such property, to an amount not exceeding one hundred dollars to each person, shall be a preferred debt and paid in full." Section 11721 following this provides for the priority of such liens in this language:

"Claims of employees for labor, if not contested, or if allowed after contest, shall have priority over all claims against or liens upon such property, except prior mechanics' liens for labor in opening or developing coal mines as allowed by law."

It will be observed that this statute gives the preferred claims of laborers in specific terms *"priority over all claims against or liens upon such property"* with one exception. No such provision is found in the Arizona Code. The Arkansas and Georgia decisions, *Carraway* v. *Phipps,* 191 Ark. 326, 86 S. W. (2d) 12, and *Aronoff* v. *Woodward,* 47 Ga. App. 725, 171 S. E. 404, holding a laborer's lien prior to a pre-existing mortgage, were based on statutes providing in unmis-

takable language that they should have superiority. In Alabama and Kentucky the courts have also made the same ruling, because in both states the statutes provide that the "lien of such employe shall be superior to the lien of any mortgage or other incumbrance." *Graham* v. *Magann Fawke Lumber Co.*, 118 Ky. 192, 80 S. W. 799, 800, 4 Ann. Cas. 1026; *Wimberly* v. *Mayberry et al.*, 94 Ala. 240, 10 So. 157, 14 L. R. A. 305. There can be no question under the codes of these five states but that the laborer's preferred right or lien displaces a prior existing chattel mortgage, and such would be true in this state if section 62–215 contained language showing such to be the legislative intent.

That such was not the purpose of this section is further indicated by the fact that article II, chapter 62, Arizona Code of 1939, provides for liens for various workers, those on buildings, on waterways and highways, on improving city lots, on mills and factories, etc., and subjects the premises on which the labor is performed to liens for the payment of their services, yet in each of these instances the liens are made by section 62–213 subordinate to a prior lien or mortgage of which the laborer had notice, either actual or constructive, when he commenced the labor. But the lien given by this article in section 62–209 to miners or laborers who work in or upon mines or mining claims is not subordinated by section 62–213 to prior mortgages because in creating the lien section 62–209 specifically provides that "the lien shall attach to the mines or mining claims in or on which said labor was performed . . . *in preference to any prior lien or encumbrance, or mortgage upon said mine or mining claim.*" (Italics ours.)

Section 62–213, however, has no application to the liens created by article IV, chapter 62, Id., among which is the lien given by section 62–402 to a carpen-

ter, mechanic, artisan or other workman for his labor in repairing any article, implement, utensil or vehicle, except a motor vehicle. These liens are not subordinated to a prior lien or mortgage, for the worker is permitted to retain possession of the article until he is paid for his services, and under the authorities this is true regardless of the existence of a prior lien or mortgage. *Mortgage Securities Co.* v. *Pfaffmann,* 177 Cal. 109, 169 Pac. 1033, L. R. A. 1918D, 118.

Section 62–215 first became a part of the law of Arizona in 1889 when the Fifteenth Territorial legislature enacted chap. 10, Session Laws of that year. As passed it had three sections and each of them provided that the wages of miners, mechanics, salesmen, clerks or laborers to the amount of two hundred dollars for services rendered within sixty days next preceding the following events were preferred claims and must be paid before any other creditors: The first, when the employer made an assignment on account of inability to pay his debts or in proceedings in insolvency; the second, in case of the death of the employer and after the expenses of the funeral, the last sickness, the administration of the estate and the allowance to the widow and infants had been paid; the third, in case the employer's property is sold under execution, attachment and writs of similar nature, except for claims for labor done. These provisions were incorporated in chapter 5 of the title, "Liens" of the 1901 Code in substantially the same form and were carried into the 1913 Code as part of the same chapter of that title. But in the revision of 1928 sections one and two were combined and became section 1361 of that code, and section three became section 2034. It occurs to us that the preferred rights the legislature intended to confer upon the laborers mentioned in these three sections are the same and it is plain from the authorities that the priority given wage claims could not, in case

of an assignment by the employer or in case of his death, displace a prior existing lien or mortgage but would have priority over the claim of any unsecured creditor, *Visalia Sav. Bank* v. *Curtis,* 135 Cal. 350, 67 Pac. 329, and we think the same is true in case an employer's property is being sold under an execution, attachment or similar writ. *McDaniel* v. *Osborne, supra,* and *Seymour* v. *Berg, supra.*

The judgment is reversed and remanded for action in conformity with the views expressed herein.

LOCKWOOD, C. J., and ROSS, J., concur.