HALL, Judge.
The plaintiffs, John G. Wehran and Lawrence A. Chehardy, owners of an undivided V20 interest each in and to Sections. 66 and 71, Township 15 South, Range 18-East, situated in Lafourche Parish, executed separate 5 year primary term oil, gas and mineral leases in favor of Helis Petroleum Corporation, each dated July 20, 1953. The leases are identical in their provisions, and each covers the undivided interest of the respective lessors in the described property. The remaining co-owners of this property, Acme Land & Timber Co.,. Ltd. and Mrs. Laura Serpas Brady, each likewise executed identical leases on the same date to the same corporation.
Plaintiffs filed this suit in the 24th Judicial District Court for the Parish of Jefferson on August 26, 1958. In it they sought cancellation of their respective mineral leases on the ground that they had expired, for statutory damages and attorney’s fees as provided in LSA-R.S.. 30:102, and for damages resulting from the drilling of a “dry hole” which they allege to have been commenced subsequent to the expiration of the leases. Made parties defendant are Helis Petroleum Corporation, the original lessee, and nine others-alleged to have an interest in the lease as assignees and sub-assignees of that corporation. Included in this number is-Frankfort Oil Company, a division of the Calvert Distilling Company, which is alleged to have been the operator which drilled the dry hole. Plaintiffs additionally named- as defendants, Acme Land and Timber Co., Ltd. and Mrs. Laura Serpas. Brady although no demand was made on these parties for any relief and they filed no pleadings. No judgment affecting them has been rendered in these proceedings and' their appeals have been dismissed. (See Werhan et al. v. Helis et al., La.App., 147 So.2d 260.) Whenever reference is made herein to “the defendants” it will be understood that the latter two parties are not included.
Various exceptions were filed on the part of the defendants, including an exception to the jurisdiction of the Jefferson *222 Parish Court rationae personae (venue) all of which were overruled by the District Judge.
Prior to the trial on the merits, which commenced on February 27, 1961, the leases and assignments were released by the defendants and the question of ordering their cancellation became moot, leaving for consideration only the question of damages and attorney’s fees. After trial on the merits which consumed ten days, the District Judge, holding that the leases expired at midnight on July 19, 1958 and that the well drilled by Frankfort Oil Company was wrongfully commenced after the lease had expired, rendered judgment in favor of the plaintiffs as follows:
1) Against all defendants in solido for the sum of $18,000.00 as statutory damages representing loss of lease bonus.
2) Against all defendants in solido for the sum of $20,000.00 as statutory damages representing attorney’s fees.
3) Against Frankfort Oil Company, a division of Calvert Distilling Co., for the sum of $172,095.00 as damages for the wrongful drilling of a “dry hole” on plaintiffs’ property.
4) (The judgment stipulated that all amounts were to bear legal interest from the date of judgment until paid.)
Each of the defendants appealed. Plaintiffs answered the appeals and seek to have the judgment against Frankfort Oil Company made solidary against all defendants and to have the interest run on all amounts from the date of judicial demand instead of from the date of the judgment.
Appellants urge us to consider the case on the merits and to find that the leases were in full force and effect at all times during the drilling of the Frankfort Oil Company well and until they were voluntarily released by the defendants. They urge in the alternative that we consider and maintain the exceptions to the jurisdiction (venue) of the trial court and either dismiss the suit or remand it for transfer to the 17th Judicial District Court for the Parish of Lafourche.
The facts are not in dispute. By separate instruments dated July 20, 1953 each of the plaintiffs granted an oil, gas and mineral lease in favor of Helis Petroleum Corporation covering his respective undivided interest in and to certain acreage in Lafourche Parish which included the bed of a small shallow lake, known as Lake Boeuf, and lands surrounding it. Both leases are identical in form and contain the following clauses which are pertinent to this suit:
“2. Subject to the other provisions herein contained, this lease shall be for a term of five (5) years and no months from this date (called “primary term”) and as long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith hereunder or operations are conducted as hereinafter provided”.
“3. If operations for the drilling of a well shall not be commenced on said land or on acreage pooled therewith on or before the expiration of twelve (12) months from the date hereof, this lease shall terminate as to both parties, unless on or before such date ■Lessee shall pay or tender to Lessor or to Lessor’s credit in the Whitney National Bank at New Orleans, Louisiana, (which bank and its successors are Lessor’s agent, and shall continue as depository for rentals payable hereunder regardless of changes in ownership of said land or rentals) the sum of Three Hun *223 dred and °%oo Dollars ($300.00), which payment shall extend for a period of twelve (12) months the time within which such operations may be commenced. Thereafter upon payment or tender in like amount and like manner annually the commencement of such operations may be further deferred for successive periods of twelve months each during the remainder of the primary term * * * operations hereunder shall be deemed to be commenced when the first material is placed on the ground.”
If prior to the discovery of oil, gas or other mineral on said land or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon, or, if, after discovery of oil, gas or other mineral, the production thereof should cease for any cause, this lease shall not terminate if Lessee commences additional drilling or reworking operations within sixty (60) days thereafter, or, if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty (60) days from date of abandonment of the dry hole or cessation of production. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term there shall be no production of oil, gas or other mineral on said land or acreage pooled therewith and Lessee should abandon a dry hole thereon, or within such period production previously had on the premises shall cease from any cause, no rental payment or operations shall be necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term oil, gas or other mineral is not being produced on said land or on acreage pooled therewith but Lessee is then engaged in drilling or reworking operations thereon, or Lessee shall have abandoned a dry hole thereon, or production previously had on the premises shall have ceased for any cause, within sixty (60) days prior to the end of the primary term, this lease shall remain in force so long as operations are prosecuted with no cessation of more than sixty (60) consecutive days or, as the case may be, resumed within sixty (60) days after cessation, and thereafter prosecuted with no cessation of more than sixty (60) . consecutive days, and if they result in the • production of oil, gas or other minerals, so long as oil, gas or other mineral is produced from said land or from acreage pooled therewith. ‘Produced’ and ‘production’ within the meaning of this paragraph and of paragraph 2 hereof shall mean produced or production in any quantity so that royalties may be payable thereon to Lessor as herein provided”.
Both leases were properly maintained in effect by rental payments made on or before each anniversary date i. e. on or before July 20 in 1954, 1955, 1956 and 1957 thus maintaining the leases to the end of the five year primary term.
No operations of any nature were conducted or commenced on the leased premises by the lessee corporation or anyone holding under it until the latter part of June 1958 when a well location was staked in the lake. Thereafter Frankfort Oil Company, operator of the lease, ordered a drilling barge and derrick to be brought in *224 from Corpus Christi, which, after some delay, arrived at a bayou near the leased property. In order to move it onto location it was necessary to dredge a canal from the bayou to the lake and to dredge a channel through the lake to the selected well site. The dredging operations were conducted on plaintiff’s property through July 19, 1958. The drilling barge and derrick, which had been following the dredge, became stuck in the canal leading to plaintiffs’ property and was still stuck in the canal at midnight July 19, 1958. On July 20, 1958 at approximately 11:30 A.M. the drilling barge and derrick reached location and the barge was sunk at the well site preparatory to drilling. The well was actually “spudded in” on July 20, 1958 at about 4:30 P.M. and by midnight of that day the well had been drilled to a depth of 159 feet. Drilling continued thereafter without interruption until October 11, 1958 when it was abandoned as a “dry hole” at 13,021 feet.
On August 4, 1958 plaintiffs addressed a letter to Frankfort Oil Company advising that the term of the leases had expired and requested certificates of cancellation. Receiving no reply, plaintiffs, on August 19, 1958 wrote Frankfort Oil Company stating that unless certificates of cancellation were received within 48 hours suit would be filed. On August 20, 1958 Frankfort Oil Company replied to plaintiffs’ letter advising them that actual drilling had commenced prior to the expiration date of the leases. This suit followed.
The ultimate issue in this case is whether Frankfort Oil Company’s drilling operations were commenced after the leases had expired, or whether Frankfort’s operations on July 19 and July 20, 1958 were sufficient and timely enough to continue the leases in effect beyond the primary term.
Plaintiffs’ principal contention is that under a proper interpretation of the provisions of paragraph 6 of the leases, drilling must have been commenced at least 60 days before the expiration of the primary term in order to preserve the leases beyond that time. Alternatively, plaintiffs contend that the primary term of the leases expired at midnight July 19, 1958 and that since drilling operations had not been commenced on or before that time, the leases then terminated.
Defendants contend that plaintiffs’ interpretation of paragraph 6 is incorrect; that a well commenced on the last day of the primary term is sufficient to continue the leases in effect during the time such operations are conducted and for 60 days thereafter. Defendants further contend that the primary term of the leases did not expire until midnight of July 20, 1958 at which time actual drilling was in progress. They contend alternatively that the operations conducted on the leased premises on July 19, 1958 constituted commencement of drilling operations under the leases.
Manifestly no operations whatever had been commenced 60 days before the expiration of the primary time. We are moreover of the opinion that Frankfort’s operations on July 19, 1958 did not constitute a commencement of drilling operations within the meaning of leases. The leases provided that “operations hereunder shall be deemed to be commenced when the first material is placed on the ground”. We take it that this means materials to be used in drilling or the commencement of drilling. See Noxon v. Union Oil Co. of California, 210 La. 1074, 29 So.2d 67. As of midnight July 19th the drilling barge and rig were stuck in the canal leading to the drilling site. At that time no drilling material whatever had been placed “on the ground” (i. e. at the well location) and while the dredge had been operating over the location preparing it to receive the drilling barge we do not consider that to be a commencement of operations within the meaning of the leases
*225 On the other hand the well was actually “spudded in” on the afternoon of July 20th and by midnight had been drilled to a depth of 159 feet.
Therefore as we see it there are two questions presented to us for resolution:
1) Does paragraph 6 require operations to be commenced at least 60 days before the expiration of the primary term in order for the leases to be extended beyond the primary term, or is such an extension accomplished by the commencement of drilling on the last day of the primary term?
2) Did the primary term of the leases expire on July 19 or did it expire on July 20, 1958?
-1-
Plaintiffs base their argument on the third sentence of paragraph 6 which we repeat for convenience:
“If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land or on acreage pooled therewith but lessee is then engaged in drilling or reworking operations thereon, or lessee shall have abandoned a dry hole thereon, or production previously had on the premises shall have ceased for any cause, within sixty (60) days prior to the end of the primary term, this lease shall remain in force so long as operations are prosecuted with no cessation of more than sixty (60) consecutive days, or, as the case may be, resumed within sixty (60) days after cessation, and thereafter prosecuted with no cessation of more than sixty (60) consecutive days, and, if they result in the production of oil, gas or other minerals, so long as oil, gas or other mineral is produced from said land or from acreage pooled therewith.”
Plaintiffs contend that since neither oil, gas nor any other mineral was being produced at the expiration of the primary term, the three conditions under which the' leases could be continued in effect beyond the primary term are if:
a) Lessee is engaged in drilling or reworking operations thereon, or
b) Lessee shall have abandoned a dry hole thereon, or
c) Production previously had on the premises shall have ceased for any cause.
Plaintiffs point out that the three conditions are joined together with the disjunctive “or” and that immediately following the third condition, set off between commas, is the qualifying phrase “within 60 days prior to the expiration of the primary term”, and plaintiffs argue that as a matter of grammatical construction each of the three conditions must be held to be qualified by the qualifying phrase, “Within 60 days prior” etc. And since in this particular matter the lessee had not during the primary term abandoned a dry hole, nor was there any cessation of production previously had the only remaining condition under which the lessee could maintain this lease beyond the primary term would be in compliance with condition (a) “engaged in drilling or reworking operations thereon”, qualified by the phrase: “within sixty (60) days prior to the end of the primary termPursuing their argument further plaintiffs say that the phrase “within sixty (60) days prior to” means “not later than 60 days prior to”, and cite the following cases holding that the word “within” when used in conjunction with the phrase “prior to” means “before”, “not later than” or “at any time less than”. Application of Dowdall, 138 Misc. 269, 245 N.Y.S. 539; Dunham v. Reichlin, Cal.App., 8 P.2d 922; Harmon v. Hopkins, 116 Cal.App. 184, 2 P.2d 540; Hammond v. Connolly, 63 Tex. 62; Pumphrey v. Stockett, 187 Md. 318, 49 A.2d 804; State ex rel. Cassidy v. Zaller, 142 Ohio St. 186, *226 50 N.E.2d 991; Prior v. Pryors, Printers, 56 Ariz. 572, 110 P.2d 229.
Plaintiffs therefore conclude that in this particular case in order for the leases to have been extended beyond the primary term the lessee must have been engaged in drilling or reworking operations on or before midnight May 19, 1958.
We have been at pains to set forth plaintiffs’ contentions on this point for the reason that it was so strenuously argued by them. The District Judge did not pass upon this contention and it is fair to assume that he was not impressed thereby.
Regardless of whether each of the three conditions may be said as a matter of grammatical construction to be modified by the phrase “within sixty (60) days prior to” etc. it seems to us that the rules of grammar must give way to what to us is the plain meaning of paragraph 6. (See LSA-C.C. Art. 1946.) The sentence in question begins as follows: “If at the expiration of the primary term oil, gas or other mineral is not being produced * * * but lessee is then engaged in drilling or reworking operations thereon * * * this lease shall remain in force so long as operations are prosecuted * * * The word “then”, it seems to us, refers to the phrase “at the expiration of the primary term”, and the sentence means that if lessee is engaged in drilling at the expiration of the primary term the lease shall remain in force as long as operations are prosecuted with no cessation of more than sixty days. (See Petersen v. Robinson Oil & Gas Co., Tex.Civ. App., 356 S.W.2d 217, decided April 5, 1952 in which a Texas Court held this to be the correct interpretation of an identical clause).
Plaintiffs’ interpretation would in effect deny to lessee the right to do anything on the leased premises during the last 60 days of the primary term, and would thus conflict with the provisions of paragraph 3 of the lease which grants lessee the right to commence drilling at any time within the primary term (all rentals having been paid).
Moreover we are not prepared to hold that the phrase “within sixty days prior to the end of the primary term” means “not later than sixty days prior to”. The cases cited by plaintiffs deal mainly with statutory construction and the decisions are obviously the result of efforts by the Courts to save the statutes or to render them workable. For instance, the cited case of Dunham v. Reichlin involved a statute which provided that litigants would be presumed to waive a trial by jury unless the jury fees were deposited “within ten days prior to the date set for trial”. The Court held that the fees must be deposited before the 10 days started to run, the important purpose being to have the fees deposited in time to summon the jury.
It is our opinion that, under the provisions of the leases in question, if the lessee is engaged in drilling on the last day of the primary term the leases will remain in force thereafter so long as operations are continued with no cessation of more than 60 consecutive days.
-2-
Each of the leases in question provides in paragraph 2 that “this lease shall be for a term of five (5) years and no months from this date (called ‘primary term’)”. Each of the leases is dated July 20, 1953. Plaintiffs contend that the primary term of the leases expired at midnight July 19, 1958. Defendants contend that the primary term did not expire until midnight July 20, 1958:
It is universally held that unless a contrary intent is specifically shown a “year” means a calendar year. Likewise fractions of a day are considered a whole day. Therefore it is clear that if the date of execution of the leases is included in the five year period, the primary term of the leases terminated at midnight July 19, 1958. On the contrary if the date of execution is excluded the primary term expired at midnight July 20, 1958.
*227 In Section 4, Title 4 of Book 3 of the Civil Code certain rules are set forth relative to the computation of time, among them being the rule announced in LSA-C.C. Art. 20SS, which reads as follows:
“Art. 2058. When the contract to do the act in a certain number of days, or in a certain number of days after the date of the contract, the day of contract is not included in the number of days to be counted, and the obligor has until sunset of the last day of the number enumerated for the performance of his contract, with the exception contained in the last preceding article.”
The District Judge held that the primary term of the leases expired at midnight July 19, 1958, his reasoning being that a mineral lease is not a contract in which there is an obligation to do, to perform, or not to do, and therefore Article 2058 et seq. of the Civil Code are inapplicable. The District Judge then concluded that the date of the leases is to be included in determining the term of the leases, citing Baker v. Potter, 223 La. 274, 65 So.2d 598; Ratcliff v. Louisiana Industrial Life Ins. Co., 185 La. 557, 169 So. 572; Housing Authority of the Town of Lake Arthur v. T. Miller & Sons, 239 La. 966, 120 So.2d 494. The District Judge also cited several common law authorities to the effect that if an interest or estate is vested on the date of the contract, that date is counted in computing the term even though the expression “from” or “after” a date is used.
We do not consider it necessary to decide whether the leases contain an obligation to do, or to perform, or whether Article 2058 et seq. of the Code are applicable to a mineral lease. If the codal rules are not applicable it does not follow that the converse of the rules must be applied.
The leases are “for a term of five years and no months from this date (July 20, 1953)”.
The general rule is thus stated in 86 C.J.S. Time § 13(3), p. 851:
“While ‘from’ and ‘after’ are generally considered to exclude the terminus a quo, and are usually regarded as terms of exclusion, they are not used in every instance as terms of exclusion, and they may be used in a connection that gives them an inclusive meaning, but they will be treated as having this meaning only when it is clear they were used in this sense.
“Since the words ‘from’ and ‘after’ are generally considered to exclude the terminus a quo, and are usually regarded as terms of exclusion, it is the generally accepted rule that in computing a period of time ‘from’ or ‘after’ a certain day or a given date, or from the day of a specified act, the day or date from which the reckoning is made will be excluded and the last day of the period will be included * * * This rule is especially applicable where the question of construction relates to the preservation of a right or the exclusion of a forfeiture.”
American Jurisprudence, Vol. 52 Verbo “Time”, Sec. 17, page 342 states the rule as follows:
“ * * * However, at the present time, both in the construction of contracts and statutes as well as in matters of practice, when time is to be computed from a particular day or when an act is to be performed within a specified period from or after a day named, the rule is to exclude the first day and to include the last day of the specified period * *
And in Section 23 at page 349 of the same volume, American Jurisprudence states:
“However, apparently based on a desire .to avoid forfeitures and to give the utmost permissable indulgence to persons required to act within a limited *228 time from a specified day or act, the courts now generally hold ‘from’ to be a term of exclusion; hence, when a period of time is to be reckoned ‘from’ a certain day, unless there is something in the context or circumstances to indicate a different intention, the day from which the time is to be reckoned will be excluded from the computation.
“While there are some decisions holding that in the computation of time from an act done, the day of the act is to be included, although in computing from a day specified, the day is to be excluded, this distinction does not rest on a sound principle, and in most jurisdictions is no longer recognized. The general rule now is the computing time, whether from the date or the day of the date, or from a certain act or event, the day of the date or event is to be excluded; but under both rules, in order to avoid the effect of an es-toppel or to save a forfeiture, the day on which an act is done will be excluded in the computation of time running from the doing of an act.”
In 86 C.J.S. Time § 13 (9)b, page 863 we find the following:
“The general rule for computing the term of a lease is to exclude the day named, and include the last day of the period, unless something is shown to indicate an intention of the parties to the contrary, and thus, where a lease provides that it shall continue for a specified period ‘from’ a particular day, such day, nothing else appearing, is to be excluded in the computation of the duration of the term. * * * ”
The Ratcliff case and the Housing Authority case, supra, cited by the District Judge are in no wise in conflict with the general rules as above stated. In Ratcliff the Court found that, under the specific provisions of the insurance policy in question, the date of execution of the policy was to be included but the Court was prompted to say this:
“ * * * Strictly speaking, of course, when we calculate a year from- or-after a given day, we do not include in the calculation the day from which or after which the year is to run. * * "
And in Housing Authority the Court said:
“In the case here the word ‘after’ is used. Generally, when computing time ‘after’ an act, the day on which the event took place is excluded. American Jurisprudence, Vol. 52, Sections 17 and 27, pages 342 and 352.”
The general rules above set forth are applicable to mineral leases. In Summers Oil and Gas, Vol. 2, Sec. 304, page 320, we find the following:
“Where a lease is made for a definite term of years, and to continue thereafter as long as oil or gas are produced in paying quantities from the land, it becomes material to know precisely at what time the definite term expires. This is so because production within the limits of the definite term is a condition precedent to the extension of the lease beyond that term, and time is of the essence. In accord with the common law rule, it has been held that, where a lease provided that it was to continue ‘for five years from this date’, the date of the lease should be excluded in the computation of time, unless it clearly appeared from the instrument itself that it should be included.”
In Taylor v. Buttram, La.App., 111 So.2d 576, the Court said:
“The oil and gas lease in question has a primary term of ten years and was dated December 7, 1937, which means that the same expired on December 7, 1947 * *
In Pace Lake Gas Company v. United Carbon Co., 177 La. 529, 148 So. 699, the *229 Supreme Court said that a lease dated May 2, 1924 for a term of five (5) years expired on May 2, 1929.
In Landry v. Flaitz, La.App., 148 So.2d 360 the First Circuit Court of Appeal in referring to a lease dated March 29, 1957 stated that the lease was for a primary term of three years ending March 29, 1960 and that the Commissioner’s Order (dated March 28, 1960) was issued one day prior to the expiration of the primary term.
In Geier-Jackson Inc. v. James, D.C., 160 F.Supp. 524, the lease was dated July 9, 1947 and was for a primary term of ten (10) years from the date thereof. The Court said:
“All of the delay rentals provided for in the lease in question were timely paid. Since no oil, gas or other minerals were being produced from the James-Johnston Tract or any acreage pooled with said tract on July 9, 1957, and a dry hole had never been completed on said tract, the lease in question expired by its own terms at midnight on July 9, 1957, unless such lease was extended past said date by virtue of the provisions of the 60 day clause contained in said lease and above quoted. For the 60 day clause to extend said lease beyond July 9, 1957, under the facts in this case, plaintiff must have been engaged in drilling operations on July 9, 1957. If the plaintiff were engaged in such drilling operations at such time, the lease would remain in force as long as such drilling operations continued without cessation of such drilling operations for more than 60 consecutive days. On the other hand if it were not engaged in such drilling operations at such time, the lease expired or terminated at midnight on July 9, 1957, and had no further force or effect thereafter.”
In Davis v. Commissioner of Internal Revenue, 7 Cir., 241 F.2d 701, the suit involved a deduction for loss on an investment in an oil, gas and mineral lease.The lease was dated January 1, 1940 and was for a term of 5 years from date. The deduction was taken in 1944 on the ground that the lease expired in 1944, but the Court held:
“We think there can be no- doubt that the definable date for fixing the time of the loss was January I, 1945. In making such computations the first day of the period is excluded. Consequently, the lease, having been made January 1, 1940, did not expire until the end of January 1, 1945. This is in accord with the doctrine announced by Mr. Justice Holmes in Burnet v. Willingham Loan & Trust Co., 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448. Similar are the announcements of other courts.”
In Petersen v. Robinson Oil & Gas Company supra the Court held that a lease dated March 27, 1947 for “a term of ten years from this date” would have expired at midnight on March 27, 1957 had not the drilling contractor staked a location and commenced drilling operations on that date.
Plaintiffs have cited no mineral lease decisions which have held contrary to those cited hereinabove, unless Baker v. Potter, supra, can be said to be contrary thereto. In that case the lessor had filed a suit for cancellation of a lease for alleged non-payment of rental. After holding in favor of the lessee the Court granted lessee an extension of the lease from the time suit was filed by the lessor. The Supreme Court said:
“In the present case, the lease was executed on September 15, 1947 and was for a primary term of five years-. By its own terms therefore it would have expired on September 15, 1952.”
Then the Court, in order to determine the time the lease should be extended, went on to calculate how much time the lease had been in effect before suit was filed, and how much time remained in the lease. *230 The Court’s figuring, according to plaintiffs, shows that it included the date of the lease in its calculation. If plaintiffs are correct, the opinion contains a contradiction for if the date of the lease he counted the lease would have expired on September 14, 1952 instead of September 15, 1952 as stated by the Court.
There remains for consideration plaintiffs’ contention that the rights granted by the leases became vested in the lessee immediately upon execution of the leases, viz. in the forenoon of July 20, 1953. Plaintiffs argue that the date the interest vested must be included in the computation of the primary term, citing the following statement found in 52 Am. Jur. Verbo “Time”, Sec. 24 page 350:
“When the words ‘from the date’ or ‘from’ a day named, are used in connection with the creation of an estate or interest, and it is not contrary to the expressed intention of the parties, the date named from which the estate or interest is to exist is to be included, and the estate or interest vests on that day. However, the words ‘from and after’ and like terms used in the devise of a remainder after a life estate, refer merely to the time of the enjoyment of the estate, and not to the time when it vests, unless there is something in the devise to indicate a contrary intent.”
Plaintiffs also cite a number of decisions from common law states which include the first day in the calculation of a term. An analysis of these decisions shows that the result in each of them was reached in order either: (a) to give effect to the intent of the parties as indicated in the instrument under consideration, (b) to conform with “the universal understanding of the country”, (c) to give effect to the time when possession was taken, or (d) in order to save transactions or to prevent forfeitures.
In the instant case we are not impelled by any of these considerations to include the date of execution of the leases in calculating the term thereof. It seems clear to us, considering the ordinary meaning of the words “from this date” and the general rule relative to the interpretation of such words, that the date a quo should be excluded and the date ad quem included in the calculation of the term of the leases. We are confirmed in this opinion by all of the mineral lease decisions on the subject which have come to our attention.
We therefore hold that the primary term of the leases did not expire until midnight July 20, 1958, and since Frankfort Oil Company’s drilling barge and derrick was on location at 11:30 A.M. and the well was “spudded in” at 4:30 P.M. on that day, such operations continued the leases in full force and effect as long as the drilling was prosecuted with no cessation of more than sixty (60) consecutive days, and for sixty days thereafter. Since the record shows that the well was drilled to completion on October 11, 1958 without any cessation, the leases remained in force until they were voluntarily released by defendants on December 10, 1958. All of the defendants’ operations having taken place while the leases were in force, plaintiffs’ claims for damages must be dismissed.
For the foregoing reasons the judgment appealed from is reversed and plaintiffs’ suit is dismissed, costs in both courts to be borne by plaintiffs.
Reversed.