445 P.2d 852

Jack W. LONDEN and Doris M. Londen, his wife, Appellants,

v.

John J. HAY and Gertrude S. Hay, his wife, Appellees.

No. 1 CA–CIV 589.

Court of Appeals of Arizona.

Oct. 14, 1968.

Broadman & Crown, by Ira Broadman, Phoenix, for appellants.

Snell & Wilmer, by Robert Bernstein, Maynard P. Goudy, Phoenix, for appellees.

STEVENS, Judge.

The appellees herein will be referred to as the plaintiff. The appellants herein will be referred to as the defendant. The defendant seeks to reverse the trial court's after-judgment order which denied the request of the defendant to vacate the Sheriff's Sale of real property, a sale conducted on a special execution issued after a judgment of mortgage foreclosure. There were two basic grounds urged in the trial court and the same grounds are urged here. These grounds are that the sheriff did not first sell the personal property covered by a chattel mortgage which was foreclosed in the same judgment as the real property mortgage foreclosure and that the sale price on the execution sale of the real property was so grossly inadequate as to be inequitable.

The judgment of foreclosure is not attacked. In point of time, the judgment is the first trial court document presented to this Court. The judgment names as defendants:

"WORLD INTERNATIONAL GROUP, INC., an Arizona corporation; JACK W. LONDEN and DORIS M. LONDEN, his wife, if they be living; their unknown heirs if they be dead; JOHN DOE 1–10, JANE DOE 1–10 and A through Z corporations."

The judgment was "approved as to form" by the then counsel for the defendant. The judgment confirms

"The default of each of the defendants who have not answered or otherwise appeared in this action * * *."

We are not informed as to the defendants, other than the appellants who were served, or as to the manner of service.

In reconstructing the factual background of this case we have called upon the judgment of foreclosure; the reporter's transcript of the testimony which was presented at the after judgment hearing with the exhibits introduced in evidence at that hearing; and the arguments of counsel presented to this Court during the course of the oral argument of the merits of this appeal.

The plaintiff purchased the land in question, then vacant, in 1959. He improved the land by causing the dwelling in question to be constructed thereon. The dwelling had unusual features which, in the opinion of one of the persons who testified at the after judgment hearing concerning the value of the land and its improvements,

rendered the property not readily salable. In connection with the construction of the dwelling, the plaintiff executed a note and mortgage dated 10 February 1961. The plaintiff's total investment, including the note and mortgage, was approximately $175,000.00.

In March 1962 the plaintiff sold the property to the defendant. The property was sold without furnishings. The purchase price was $150,000.00 of which $10,-000.00 was paid in cash, a portion was paid by assuming the February 1961 note and mortgage and the balance was evidenced by a further note and mortgage, these documents bearing the date of 15 March 1962. The Purchase Agreement contained the following provision:

"* * * as the furniture is moved in the house Mr. Londen agrees to give Dr. Hay a chattel mtg on same as additional security for payment of the second mtg & note."

A chattel mortgage of even date was executed. No personal property was described therein although A.R.S. § 33–752.01, then in effect, provided, in part:

"B. The mortgage may be made in substantially the following form:

\* \* \* \* \* \*

"That the mortgagor mortgages to the mortgagee:

(Description of property)

as security for the payment to him of ——— dollars, * * *."

The chattel mortgage provided, in part:

"The mortgagors * * * grant, bargain, sell and mortgage unto Mortgagees, items of furniture, furnishings, and equipment to be acquired by Mortgagors and placed by or for them on the above described property, said furniture, furnishings, and equipment having an original purchase price of Twenty Thousand Dollars ($20,000.00), it being specifically understood and agreed that this Chattel Mortgage shall without any further act of Mortgagors or Mortgagees be deemed

to impose a lien upon all such furniture, furnishings and equipment as and when the same are owned or acquired and placed as aforesaid (all furniture, furnishings and equipment at any time subject to the lien hereof being hereinafter referred to as the 'Property') ;

\* \* \* \* \* \*

"This Chattel Mortgage is made upon the following express provisions, convenants and conditions:

\* \* \* \* \* \*

"3. If at any time, or from time to time, Mortgagees or their attorney shall deem it advisable and shall so request, Mortgagors shall execute an appropriate supplement or supplements to this Chattel Mortgage expressively and effectively including within the lien hereof any and all of the Property which may hereafter be acquired by Mortgagors." ·

The plaintiff testified, and this testimony was not contradicted, that at the time of the sale and the execution of the mortgages he anticipated that the defendant would move furniture from Colorado and place it in the house. This the defendant did not do. The defendant occupied the dwelling for a time after his purchase. The reporter's transcript discloses his testimony, in part, as follows:

"A Well, sir, we camped there for about six months. We really didn't have our furniture there.

"Q You occupied the premises for six months?

"A I believe it was about six months, yes, sir."

Thereafter the defendant sold the property to World International Group, Inc. One Lefferdink entered into occupancy of the dwelling. He was not available as a witness at the time of the after judgment hearing. World, in its purchase, did not assume any of the mortgage indebtedness. The defendant's testimony continues:

"Q And then, who occupied it thereafter?

"A Primarily, World International Group occupied it after we sold it to that.

\* \* \* \* \* \*

"Q And who was in possession of the premises when this foreclosure action was commenced?

"A I believe the property had subsequently been transferred to International Thrift Club, and to the best of my knowledge they were in possession of it at that time.

"Q At the time you made the sale to World International Group, did you sell your furniture, also?

"A Well, the furniture that we were, as distinguished from the rugs and drapes, was not in there at that time.

"Q Was not in there at that time?

"A No, sir.

"Q You sold to World International Group the home, the real property, plus the carpets and drapes?

"A I believe that would have covered the carpets and drapes. I am not sure as to the—

"Q What did you do with the furniture?

"A The furniture that is in there was placed in there since the time we sold.

"Q Was placed in after it was sold?

"A Been placed in there since July of 1964.

"Q Placed in there by you?

"A Yes, sir.

"Q And under what conditions? You were not the owner of the property?

"A No, sir."

The defendant testified that after the sale to World, he purchased and placed furnishings of a value of $14,000.00 in the dwelling. This was in addition to $16,000.00 worth of carpets and drapes which were apparently placed in the property before the sale to World. We say "apparently" for the reason that the defendant testified:

"A Well, I think I probably had the feeling that they belonged with the real property."

No effort was made to require compliance with the above quoted paragraph numbered "3" of the chattel mortgage. At the hearing the defendant testified that he did not have a list of the furnishings which he placed in the dwelling after his sale to World. He further testified that he had a verbal arrangement to sell the furnishings to the occupant of the dwelling for approximately $14,000.00, the sale to be consummated after the debt to the plaintiff was satisfied.

The two real property mortgages became in arrears. The plaintiff visited with Lefferdink in the dwelling seeking to work out the financial problems. While within the dwelling he observed furnishings. At the after judgment hearing the plaintiff was the first witness to be called, he being called by the defendant for cross-examination. During this phase of his testimony, he stated:

"Q Did you see furniture in there?

"A Yes.

"Q Did you know who owned the furniture?

"A I was told Mr. Lefferdink owned the furniture.

"Q Mr. Lefferdink owned the furniture?

"A Yes."

The plaintiff became the owner of the February 1961 note and mortgage, an obligation which the defendant had theretofore assumed. The judgment of foreclosure expressly describes the real property and expressly forecloses the two real property mortgages. With reference to the chattel mortgage, the judgment recites:

"12. It is further ordered foreclosing the chattel mortgage set forth in plaintiffs' third cause of action in favor of the plaintiffs and against the defendants Jack W. Londen and Doris M. Londen, forever barring said defendants or those who may claim by, through or under

them, of any and all right, title, interest, estate or lien in or upon said personal property. Plaintiffs are hereby given the exclusive right to the possession of the personal property described in said chattel mortgage with power in the premises to seize and sell the same at public or private sale, applying the proceeds first to the costs of said sale and then toward the satisfaction of this judgment."

The special execution and the sheriff's return thereon set forth the monetary aspects of the foreclosure judgment and described the real property in question. There was no special execution based upon the foreclosure of the chattel mortgage and no effort was first made to sell the chattels covered by the chattel mortgage, if indeed any chattels were covered by the chattel mortgage.

At a date which is not clear, World sold the property to International Thrift Club, a party not before this Court.

The defendant urges that the after acquired property clause in the chattel mortgage is a valid clause under the Laws of the State of Arizona. This contention is not disputed by the plaintiff. Under these circumstances we are not required to pass upon this legal question. This Court is not required to determine whether the chattel mortgage constituted an agreement to mortgage which the plaintiff could have enforced against the defendant. It is assumed that World was served and defaulted. Permitting its default to be entered may have been a deliberate act since it had not assumed the mortgage obligations and was not subject to a money judgment liability. It is quite possible that World and its representatives may have been of the opinion that the chattel mortgage was not enforceable as to World under the circumstances which have been presented to this Court.

In Arizona, chattel mortgages can be foreclosed by notice and sale and they also may be foreclosed by judicial process. A.R.S. § 33–757. A foreclosure of a chattel mortgage by judicial process requires the same legal proceedings as the foreclosure of a real property mortgage insofar as those proceedings lead up to the foreclosure judgment. We reach this conclusion from an examination of A.R.S. §§ 33–725, 12–1552, subsec. A, and 12–1554 coupled with the case of Pryor v. Pryors, Printers, 56 Ariz. 572, 110 P.2d 229 (1941).

When a chattel mortgage is foreclosed by judicial process, as with the foreclosure of a real property mortgage or the foreclosure of any other lien by judicial process, a special execution issues which must describe the property with reference to which the lien is foreclosed. See A.R.S. § 12–1554. It is at this point in the judicial process that the foreclosure procedure varies in that the place of sale and the right of redemption with reference to personal property differs from that with reference to real property. See A.R.S. § 12–1621, subsec. C, Central Finance Corporation v. Norton-Morgan Commercial Company, 23 Ariz. 517, 205 P. 810 (1922), and Young Mines Company Ltd. v. Sevring-Haus, 38 Ariz. 160, 298 P. 628 (1931).

That portion of the judgment relating to the chattel mortgage, and hereinbefore quoted, is silent as to the chattels upon which the lien was claimed. The judgment as entered would not support a special execution of chattels for that reason.

We hold that even though the plaintiff appeared to engage in some of the procedural steps essential to the judicial foreclosure of a chattel mortgage nevertheless under the circumstances outlined in this opinion, there was no foreclosure of the chattel mortgage insofar as the defendant World was concerned or in relation to its successor. The defendant's verbal contract with World to purchase the chattels for $14,000.00 remains unimpaired by the purported foreclosure. The failure of the sheriff to first sell the chattels under execution sale is no defense under these facts.

There was a conflict in the testimony as to the fair market value of the real property and its improvements which

were sold at the sheriff's special execution sale. The plaintiff testified as to his opinion as to the fair market value and as to the manner in which he computed the amount of his bid. There was other evidence presented fixing a fair market value in a sum similar to the basic figure which the plaintiff used in his computations. The defendant offered evidence that the property had a greater fair market value. Under the conflict of testimony there was evidence to support the trial court's implied finding that the plaintiff's bid at the Sheriff's Sale was not disproportionate to the market value of the property sold. Under these circumstances we hold that the guiding principles set forth in McCoy v. Brooks, 9 Ariz. 157, 80 P. 365 (1905) are not applicable.

The order is affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.